McSwain, Appellant, *v.* McSwain.

Argued November 19, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Jack E. Feinberg,* with him *John A. McMenamin,* and *Richter, Lord, Toll & Cavanaugh,* for appellant.

*Harry A. Short, Jr.,* with him *Liebert, Harvey, Herting and Short,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 4, 1966:

In 1962, Herbert McSwain (appellee), a Pennsylvania domiciliary, then a member of the armed forces stationed on the West Coast, accompanied by his wife (appellant) and infant daughter, embarked on a cross-country trip to Pennsylvania. En route, the McSwain family was involved in an accident when their automobile, operated by appellee, ran off a Colorado highway. As a result of the mishap, the McSwain's infant daughter sustained fatal injuries and died on the following day.

Subsequently, Mrs. McSwain instituted suit in Pennsylvania under the Colorado Death Act,[1] naming her husband as defendant and alleging that the accident and death of the child were the result of his negligence. Appellee filed an answer to the complaint raising the marital relationship,[2] and moved for judgment on the pleadings. The motion was granted and judgment entered below. This appeal followed.

In a memorandum opinion subsequently filed, the court below based its decision to grant appellee's motion on the ground that although Colorado, the situs of the accident, did not bar intramarital tort actions,[3] the status of the parties as domiciliaries of Pennsylvania dictated that appellee's claim to immunity be determined by reference to the law of this Commonwealth. Such law, the court concluded, barred the instant action.

In so concluding, the trial court acted in reliance on the provisions of the Act of June 8, 1893, P. L. 344, §3, as amended, Act of March 27, 1913, P. L. 14, §1, 48 P.S. §111. That Act, we have previously held, precludes the maintenance of personal injury suits between

---

[1] Colo. Rev. Stat. Ann. §41-1-2.

[2] The relationship of the parties was raised as an affirmative defense under new matter and admitted by appellant in her reply.

[3] See *Rains v. Rains*, 97 Colo. 19, 46 P. 2d 740 (1935).

spouses. See *Daly v. Buterbaugh,* 416 Pa. 523, 207 A. 2d 412 (1964) ; *Meisel v. Little,* 407 Pa. 546, 180 A. 2d 772 (1962). The issue of its applicability to intramarital suits predicated on wrongful death, however, is one of first impression in this jurisdiction. Thus, we are initially confronted with the effect of the Act of 1893 on the maintenance of an action between spouses for wrongful death. For if the Act does not operate to preclude such an action, no conflict exists between the laws of Colorado and Pennsylvania on appellant's right to pursue the present suit and the result reached below would be improper.

Prior to 1893, the capacity of spouses to sue inter se in this jurisdiction, with minor exceptions, was governed by decisional law. In accordance with the prevailing common law rule, actions grounded in tort were not permitted between spouses.[4] The Legislature, however, in enacting the Act of 1893, accorded the matter of interspousal immunity statutory treatment. The Act provides: "Hereafter a married woman may sue and be sued civilly, in all respects, and in any form of action . . . with the same effect . . . as an unmarried person; *but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property . . . .*" Act of June 8, 1893, P. L. 344, §3, as amended, Act of March 27, 1913, P. L. 14, §1, 48 P.S. §111. (Emphasis supplied.)

Although radically altering the capacity of married women to sue or be sued, the Act of 1893 did not by express terms alter the existing law with respect to suits between spouses. Divorce had long been permitted.[5] And even prior to 1893, equity had entertained jurisdiction to protect married women from the

---

[4] Cf. *Miller v. Miller,* 44 Pa. 170 (1863).

[5] See, e.g., 2 Sm. L. 343; Act of March 13, 1815, P. L. 150, 6 Sm. L. 286; Teitelbaum, The Pennsylvania Divorce Law, 23 P.S. 344 (Commentary).

unrestrained control and dominion of their separate property by their spouses.[6]

Thus, whether the exemptive provisions of the Act of 1893, in authorizing suits between spouses in "proceeding[s] to protect and recover . . . separate property", was intended to permit access to legal as well as equitable remedies and thereby sanction unliquidated damage claims is far from clear.[7] However, we need not presently determine whether the Act may be construed to authorize unliquidated damage claims with respect to invasions of those property interests which the legislation sought to protect. Our consideration of the matter leads us to conclude that we do not here deal with such an interest.

Both under the laws of Colorado and Pennsylvania the measure of recovery for the wrongful death of a minor child is the pecuniary loss so occasioned.[8] Yet

---

[6] *Schomaker v. Schomaker*, 247 Pa. 444, 447, 93 Atl. 460, 461 (1915) ; *Ireland v. Ireland*, 244 Pa. 489, 492, 90 Atl. 911, 912 (1914) ; *Dorsett v. Dorsett*, 226 Pa. 334, 336, 75 Atl. 593 (1910) ; *Heckman v. Heckman*, 215 Pa. 203, 208, 64 Atl. 425 (1906) ; see *McKendry v. McKendry*, 131 Pa. 24, 18 Atl. 1078 (1890) ; *Miller v. Miller*, 44 Pa. 170 (1863). See generally McCurdy, Property Torts Between Spouses and Use During Marriage of the Matrimonial Home Owned by the Other, 2 Vill. L. Rev. 447 (1957).

[7] Cf. *Miller v. Miller*, 44 Pa. 170 (1863). In *Meisel v. Little*, 407 Pa. 546, 549, 180 A. 2d 772, 773 (1962), this Court indicated that unliquidated damage claims were not within the enumerated exceptions of the Act of 1893 permitting suit between spouses. However, the action was one for personal injuries which unquestionably was not intended to be permitted by the Act. Thus, we were not there squarely confronted with the question of the right of one spouse to proceed in trespass against the other for damages to personal or real property separately owned. See generally McCurdy, supra note 6.

[8] See *Kogul v. Sonheim*, 150 Colo. 316, 372 P. 2d 731 (1962) ; *Herbertson v. Russell*, 150 Colo. 110, 371 P. 2d 422 (1962) ; *Hospital Ass'n v. Long*, 125 Colo. 25, 240 P. 2d 917 (1952) ; *Lehrer v. Lorenzen*, 124 Colo. 17, 233 P. 2d 382 (1951) ; *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 184 Atl. 663 (1936) ; Goodrich-Amram, §2201-

to permit the fact that redress is sought for what is denominated as a "pecuniary loss" to dictate the conclusion that an action for wrongful death is one to "recover . . . separate property" within the meaning of the Act of 1893 would be wholly inconsistent with our construction of that provision not to encompass personal injury suits between spouses. See *Daly v. Buterbaugh*, 416 Pa. 523, 207 A. 2d 412 (1964); *Meisel v. Little*, 407 Pa. 546, 180 A. 2d 772 (1962). To the extent that loss of past and future earnings are recoverable as an element of damages, every personal injury suit between spouses seeks to redress a pecuniary loss. Yet, although a married woman's earnings are her sole and separate property, free of her husband's control,[9] such actions are precluded by the statute. *Daly v. Buterbaugh,* supra, *Meisel v. Little,* supra.

In concluding that the mere fact that the action is predicated on wrongful death does not suffice to place the suit beyond the ambit of interspousal immunity, we are not unmindful that we deal in an area in which, in Mr. Justice HOLMES' words, "a page of history is worth a volume of logic."[10] Yet neither history nor logic would commend a construction of the Act of 1893 which would permit recovery for the pecuniary loss occasioned by the wrongful death of a minor child, while denying recovery for a like loss when occasioned by the negligent injury of one spouse by the other.

Appellant, however, in urging reversal, contends that the Act of 1893 does not mandate the disposition below. She bases her contention on the ground that the Colorado Death Act, upon which her action is predi-

---

28; Comments, Personal Injury Damages in Colorado, 35 Colo. L. Rev. 332 (1963).

[9] See Act of April 3, 1872, P. L. 35, §1, 48 P.S. §34; *Martin v. Davis*, 30 Pa. Superior Ct. 59 (1906).

[10] *New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 41 S. Ct. 506, 507 (1921).

cated, has been construed to confer a "property right", see *Fish v. Liley*, 120 Colo. 156, 208 P. 2d 930 (1949). Thus, she urges, the present suit falls within the exemptive provision of the Act.

We do not agree. Such characterization, however appropriate for purposes of Colorado law, is not here controlling. As to the construction of the exemptive provisions of the Act of 1893, this Court must remain the final arbiter.[11]

Given the conflict between the law of Colorado, the situs of the accident, and the law of Pennsylvania on the effect of the marital relationship of the parties on appellant's right to prosecute the instant suit, we are thus confronted with the question of whether the cir-

---

[11] Appellant seeks to distinguish our previous decisions precluding personal injury suits between spouses in reliance on the decision in *Minkin v. Minkin*, 336 Pa. 49, 7 A. 2d 461 (1939).

In *Minkin*, suit was brought under the Pennsylvania Wrongful Death Act, Act of April 15, 1851, P. L. 669, §19, 12 P.S. §1601 et seq., on behalf of an unemancipated minor against his father to recover for the negligently caused death of the minor's mother. This Court, three Justices dissenting, permitted the suit to proceed over the objection that it was barred by the rule that an unemancipated minor may not sue his parents.

Three members of the majority placed their decision on the ground that the Legislature, in designating the statutory beneficiaries, had made no exception to the grant merely by reason of the intrafamily nature of the suit. They concluded that the Act must be deemed a declaration of public policy in favor of compensation which displaced any common law bar to the contrary. Id. at 51-52. 7 A. 2d at 463. Mr. Justice STERN, later Chief Justice, concurred solely on the ground that he viewed the suit as one to vindicate a "property right" and, as such, not within the ambit of the common law prohibition. Id. at 55, 56, 7 A. 2d at 464, 465.

We do not deem *Minkin* apposite to the instant case. In *Minkin*, the immunity which was sought to be invoked was based upon the common law and, unlike that raised here, had not been accorded statutory treatment. We deem the Act of 1893 dispositive of the question here raised.

cumstances of the case warranted the application of the Pennsylvania rule.

Although rendered prior to the decision in *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A. 2d 796 (1964), in which this Court rejected the rule of lex loci delicti, the trial court's decision to look beyond the situs of the accident to apply the Pennsylvania rule of interspousal immunity was not without precedent.[12] Even at the height of its acceptance, similar departures from the dictates of lex loci delicti were made by courts confronted with a conflict as to the effect of the marital relationship on the right of the parties to sue inter se. Following the precedent established in *Emery v. Emery,* 45 Cal. 2d 421, 289 P. 2d 218 (1955), an early decision departing from the usual resort to lex loci delicti,[13] a number of courts began to apply the law of the marital domicile to determine the issue.[14] By char-

---

[12] Although there are no appellate decisions on the issue in this jurisdiction, the trial court's decision to apply the law of Pennsylvania was in accord with the decision in *Pittman v. Deiter,* 10 Pa. D. & C. 2d 360 (Phila. 1957). In *Johnson v. Peoples First National Bank & Trust Co.,* 394 Pa. 116, 118 n.1, 145 A. 2d 716, 717 n.1 (1958), the Court suggested application of the law of the marital domicile by way of dictum. Cf. *Comth. Trust Co. of Pgh. v. Stinebiser,* 108 Pitts. L. J. 231 (1960).

[13] See Annot., 96 A.L.R. 2d 973, 976 n.12, 977-78 (1964), and cases cited therein.

[14] *Thompson v. Thompson,* 105 N.H. 86, 193 A. 2d 439 (1963), overruling *Gray v. Gray,* 87 N.H. 82, 174 Atl. 508 (1934); *Koplik v. C.P. Trucking Corp.,* 27 N.J. 1, 141 A. 2d 34 (1958); *Haumschild v. Continental Casualty Co.,* 7 Wisc. 2d 130, 95 N.W. 2d 814 (1959), overruling *Buckeye v. Buckeye,* 203 Wisc. 248, 234 N.W. 342 (1931). The Restatement, in accordance with the general principle adopted in §379, Restatement 2d, Conflict of Laws (Tent. Draft No. 9, 1964), under which the local law of the state with the most significant relationship with the occurrence and the parties determines their rights, had adopted the rule that effect of the marital relationship on capacity to sue is to be determined by reference to the law of the marital domicile. Restatement 2d, Conflict of Laws, §390(g) (Tent. Draft No. 9, 1964).

acterizing the effect of the marital relationship on the rights of the parties as an aspect of family or domestic relations, rather than tort law, many courts which otherwise adhered to the rule of lex loci delicti isolated the issue for treatment under a different choice of law rule.[15] In this manner, some of the rigidity which lex loci delicti introduced into the solution of choice of law problems was partially alleviated.

It was in part a recognition of the considerations which prompted such departures and their applicability to the entire spectrum of choice of law problems which led to the growing dissatisfaction with the rule of lex loci delicti. Time found the rule increasingly criticized as a mechanical methodology, predicated on the outmoded "vested rights" theory,[16] and emphasizing certainty and predictability at the expense of other, fre-

As pointed out in the new Restatement, uncritical resort to lex loci delicti to resolve the issue has been the subject of criticism by the writers. See, e.g., Cook, The Logical and Legal Bases of the Conflict of Laws, 248-51, 345-46 (1942) ; Currie, The Disinterested Third State, 28 Law & Cont. Prob. 754, 770-72 (1963) ; Ehrenzweig, Parental Immunity in the Conflict of Laws: Law and Reason Versus the Restatement, 23 U. Chi. L. Rev. 474 (1956) ; Ford, Interspousal Liability for Automobile Accidents in the Conflict of Laws: Law and Reason Versus the Restatement, 15 U. Pitt. L. Rev. 397 (1954) ; Rheinstein, Michigan Legal Studies: A Review, 41 Mich. L. Rev. 83 (1942).

In a number of recent decisions, however, the rule of lex loci delicti has been continued to be applied. See, e.g., *Wolozin v. Wolozin*, 149 Conn. 739, 182 A. 2d 8 (1962) ; *Shaw v. Lee*, 258 N.C. 609, 129 S.E. 2d 288 (1963).

[15] See Ford, Interspousal Liability for Automobile Accidents in the Conflict of Laws: Law and Reason Versus the Restatement, 15 U. Pitt. L. Rev. 397, 417-18 (1954).

[16] Presumably many courts which adhered to lex loci delicti recognized the limitations of the "vested rights" theory, see Cook, The Logical and Legal Bases of the Conflict of Laws (1942) ; cf. *Direction Der Disconto-Gesellschaft v. United States Steel Corp.*, 300 F. 741, 744 (S.D.N.Y. 1924) (HAND, J.), adhered to the rule in the interests of certainty, predictability and uniformity of result.

quently more relevant considerations. See *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 12-13, 203 A. 2d 796, 801 (1964). In a series of significant decisions,[17] a number of jurisdictions abandoned "vested rights" and its embodiment in the rule of lex loci delicti. Recognizing that the state of the situs of the "tort" may not necessarily have a sufficient interest in the issue in dispute to warrant the interjection of its policies into the litigation, these courts embarked upon a new approach to the solution of choice of law problems which replaced the a priori assumptions of lex loci delicti with an analysis of the interests of the various states factually involved in the matter in dispute.

In *Griffith,* supra, we sought to make clear that our decision to adopt this approach was dictated by an appreciation of our federal system, the frequently varying policies of its member states, and the increasing mobility of our society. With our citizens and institutions exposed to the varying policies of different states, frequently unequal in their claims to priority, the premise of lex loci delicti that a single spatial fact is an adequate guide to the solution of choice of law problems is no longer acceptable.

Whether the policies of one state rather than another should be furthered in the event of conflict can only be determined within the matrix of specific litigation. What should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law. See *Grif-*

---

[17] *Bernkrant v. Fowler,* 55 Cal. 2d 588, 360 P. 2d 906 (1961) ; *Babcock v. Jackson,* 12 N.Y. 2d 473, 191 N.E. 2d 279, 240 N.Y.S. 2d 743 (1963) ; *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y. 2d 34, 172 N.E. 2d 526, 211 N.Y.S. 2d 133 (1961) ; cf. *Pearson v. Northeast Airlines, Inc.,* 309 F. 2d 553 (2d Cir. 1962), cert. denied, 372 U.S. 912, 83 S. Ct. 726 (1963).

*fith v. United Air Lines, Inc.,* 416 Pa. 1, 15, 21-22, 203 A. 2d 796, 802, 805-06 (1964) ; cf. *Bernkrant v. Fowler,* 55 Cal. 2d 588, 360 P. 2d 906 (1961) ; *Babcock v. Jackson,* 12 N.Y. 2d 473, 191 N.E. 2d 279, 240 N.Y.S. 2d 743 (1963).

Under the circumstances of the instant case, such analysis leads us to conclude that the court below did not err in the application of Pennsylvania law to preclude the claim here sought to be asserted.

We are led to this conclusion by an examination of the respective interests of Colorado and Pennsylvania in the effect to be given the marital relationship on appellant's right to proceed against her husband. Pennsylvania, by its rule prohibiting such suits, has expressed an interest in foreclosing litigation as an avenue for engendering friction between spouses. See, e.g., *Johnson v. Peoples First National Bank & Trust Co.,* 394 Pa. 116, 145 A. 2d 716 (1958) ; *Parks v. Parks,* 390 Pa. 287, 135 A. 2d 65 (1957); *Kaczorowski v. Kalkosinski,* 321 Pa. 438, 184 Atl. 663 (1936).[18] Colorado, on the other hand, by its rule permitting such suits, has expressed an interest in providing redress for the injured spouse even if obtained at the expense of marital harmony.

Presumably, Colorado has made its determination to permit such suits with its own domiciliaries primarily in mind. In the instant case, however, we deal with a suit between Pennsylvania domiciliaries. Any effect which this litigation may have on the marital relations of the parties is a matter of concern primarily to Pennsylvania, the state which has the basic "re-

---

[18] It is also asserted that the rule of interspousal immunity assures that spouses will not indulge in collusion so as to prevent an insurer, frequently the real party in interest, from obtaining a fair adjudication of liability. See, e.g., *LaChance v. Service Trucking Co.,* 215 F. Supp. 162, 166 (Md. 1963) ; *Parks v. Parks,* 390 Pa. 287, 296, 135 A. 2d 65, 71 (1957).

sponsibility for establishing and regulating the incidents of the . . . relationship" of the parties. *Emery v. Emery*, 45 Cal. 2d 421, 428, 289 P. 2d 218, 223 (1955). And, although Colorado, as the state of both the conduct and injury could assert an interest in this litigation in order to further the deterrence of negligent conduct on its highways and to secure, in the event of insurance, a fund for the payment of local creditors,[19] those interests would not be disserved by the application of the Pennsylvania rule of interspousal immunity in the instant case.

Unlike resort to a standard of care less rigorous than that demanded by Colorado of those who use its highways, resort to the law of Pennsylvania to bar the instant suit would have no adverse effect on any deterrence sought by Colorado through the use of tort liability. Since negligent operation of a motor vehicle invariably involves some hazard to persons beyond the family relationship, potential liability still remains to deter unreasonable conduct on the part of those able to insulate themselves from intrafamily suit.[20]

Moreover, with regard to Colorado's interest in securing a fund for the payment of local medical creditors, that interest would not be adversely affected under the facts of the instant case. Since the accident resulted in near immediate death, significant debts are not likely to have been incurred in Colorado.

Our conclusion to look to the law of Pennsylvania on the issue of intramarital immunity rests, not upon

---

[19] See Currie, The Disinterested Third State, 28 Law & Cont. Prob. 754, 771 (1963).

[20] We note in passing that we deal here only with the issue of appellant's capacity to pursue the instant action. Thus, we have no occasion to consider or discuss matters relating to the determination of the controlling law on other issues which might be presented were the action permitted to proceed. It is sufficient for present purposes that we note that in the event of conflict each issue requires separate and independent analysis.

a fixed and invariable rule of characterization, such as would dictate resort to the law of the marital domicile in all such cases, but upon a determination that the circumstances of the instant case do not warrant the interjection of Colorado law into what is essentially a Pennsylvania family controversy. The mere fact that the accident occurred in Colorado, absent the expression of a significant interest on the part of that state, does not justify our refusal to give effect to the public policy of this Commonwealth, as embodied in the Act of 1893, that suits of the instant sort not be permitted. The desirability or wisdom of that policy has, since the enactment of that Act, been a matter of legislative determination. Our conclusion here merely recognizes and gives effect to that legislative mandate.

Judgment affirmed.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice MUSMANNO dissents.