LaVONNE SCHNEIDER v. GERALD C. NICHOLS.

158 N. W. (2d) 254.

April 19, 1968—No. 40,580.

140

*Garrity, Cahill, Gunhus & Streed,* for appellant.

*Stiening, Olson, Thysell & Gjevre, Nilles, Oehlert, Hansen, Selbo &
Magill,* and *L. H. Oehlert,* for respondent.

SHERAN, JUSTICE.

Appeal from an order denying a motion for judgment notwithstanding
the verdict or, in the alternative, a new trial.

On August 2, 1965, a vehicle owned and operated on a North Dakota
highway by defendant, a resident of that state, overturned causing plain-
tiff, a guest passenger, to sustain damages on account of personal injuries
for the recovery of which this action was instituted in the State of Minne-
sota, where plaintiff resides.

In reliance upon what has been the general rule that the law to be applied
in determining liability for a tort occurring outside the forum state is
that of the jurisdiction where the accident occurred (60 C. J. S., Motor
Vehicles, § 259), the trial judge instructed the jury as follows:

"Plaintiff * * * must prove * * * that the defendant was grossly
negligent in the operation of his automobile * * *.

"* * * [G]ross negligence * * * is the omission of care which even

the most inattentive and thoughtless seldom fail to take over their own concerns. It evinces a reckless temperament. It is a lack of care which is practically willful in its nature. It is the omission of duty which is akin to fraud. It may be said that it indicates the absence of even slight care in the performance of a duty."

Although it appears from the evidence that defendant drove his car off the traveled surface of the highway without apparent justification and turned it over while trying to drive out of the ditch, and although the issue of contributory negligence on the part of the plaintiff was out of the case as a matter of law, the jury returned a verdict for defendant. If defendant was not entitled to the benefit of the North Dakota guest statute, and if, instead, recovery was permissible upon proof of ordinary negligence in conformity with the relevant Minnesota law (see, Minnesota Jury Instruction Guides, Instruction 101), a new trial is indicated.

In Kopp v. Rechtzigel, 273 Minn. 441, 141 N. W. (2d) 526, we held that the guest statute of a state where an automobile accident occurred should not be applied by a Minnesota court where *both* the plaintiff and the defendant were Minnesota residents on a pleasure trip of brief duration at the time of the accident which caused the injuries. In that case we said (273 Minn. 442, 141 N. W. [2d] 527):

"Minnesota has not adopted a guest statute but has adhered to the common-law doctrine that a passenger in an automobile is entitled to recover for the ordinary negligence of his host. The policy considerations behind the enactment of such laws are fully discussed in Phelps v. Benson, 252 Minn. 457, 461, 90 N. W. (2d) 533, 536. One of the reasons there assigned is the public distaste for 'the proverbial ingratitude of the dog that bites the hand that feeds him.' A more practical concern expressed by many courts is that where the real defendant is an insurance company, there is an unusual opportunity for collusion, perjury, and fraud. In addition, it has been said that the resulting verdicts are inevitably reflected in higher insurance rates which the motoring public must bear. However valid these and other arguments may be they have not prompted the adoption of a guest statute by the legislature of this state. In rejecting the South Dakota statute as a bar to recovery, we merely

give effect to long-standing public policy governing the rights and liabilities of citizens of Minnesota."

If the parties to the present action had been residents of Minnesota at the time this accident occurred and at the time of trial, and if the automobile involved had been registered, garaged, and insured in Minnesota, our decision in the Kopp case would be directly in point and controlling. But the fact situation differs in significant respects now to be considered.

Although defendant lived in Moorhead, Minnesota, most of his life, he had moved across the river to Fargo, North Dakota, in February 1965 and resided there with his wife in a rented apartment at the time of the accident. He was employed by American Standard Plumbing Company, a national concern with a branch office in Fargo, as a traveling sales representative.

Defendant's employer had secured liability insurance coverage for defendant in Fargo. It can be said that the car was garaged in that city although defendant's duties as a traveling salesman were carried out principally in the State of Minnesota where he serviced approximately 35 accounts as compared to but one in North Dakota and one in South Dakota.

On the day of the accident, defendant's vehicle carried 1965 license plates issued by the State of Minnesota, no change of registration to North Dakota having been effected at that time. The driver's license in his possession was one issued to him by the State of Minnesota when he was a Moorhead resident.

Defendant considered Fargo his headquarters city and the permanent place of residence of himself and his wife. He paid personal property taxes in North Dakota for the year 1965. His employment was pursuant to a contract entered in the State of North Dakota. But on the day of the accident, defendant was registered at a Breckenridge, Minnesota, motel; he had left his personal effects there while attending to business in the area on that day and planned to stay overnight.

The plaintiff, 19 years of age at the time of the accident, was a lifelong resident of this state. She was employed and lived in Breckenridge

and attended school in Wahpeton, just across the river but in North Dakota.

The relationship of passenger and guest existing at the time of the accident was established in Minnesota. Defendant and an acquaintance met plaintiff and a friend of hers at a parking lot in Breckenridge to go riding in defendant's Mustang. The girls had arrived at this place in another car which was left there, it being contemplated that the four would return later in the evening.

Breckenridge is located near the North Dakota-Minnesota boundary line and, although no fixed itinerary was agreed upon in advance, the preaccident route traveled by the group embraced roads in both states. Shortly before the incident, defendant had stopped at Wahpeton. He then headed north out of the city, intending to go to a place called "Diets Pit."

It was while defendant was driving towards Diets Pit in North Dakota that the accident happened. As he was driving on a narrow, bumpy, unfamiliar road at a speed of 35 to 40 miles per hour, with his right arm on the top of the front seat, he turned his head to talk to one of his guests sitting in the back. The car went off the road and into the ditch. Defendant shifted into second gear and accelerated in an attempt to bring the vehicle back to the traveled surface. But the car skidded sideways along the ditch bank and rolled over.

Plaintiff was taken to the hospital at Breckenridge for treatment. The other young lady, apparently not hurt seriously, returned to the parking lot in Breckenridge where the drive had commenced and was to have ended.

Whether the facts which we have reviewed serve to distinguish the present situation from that existing in the Kopp case and dictate application of the North Dakota guest statute here is the problem we must now decide.

We have found no decisions exactly in point. The relevant recent cases are to be found in 15A C. J. S., Conflict of Laws, § 8(4), notes 90.60 to 90.98; 16 Am. Jur. (2d) Conflict of Laws, § 73, notes 18 to 20; Annotation, 95 A. L. R. (2d) 12.

There are three interesting decisions of the New York Court of Ap-

peals which deal with the problem generally: Babcock v. Jackson, 12 N. Y. (2d) 473, 240 N. Y. S. (2d) 743, 191 N. E. (2d) 279, 95 A. L. R. (2d) 1; Dym v. Gordon, 16 N. Y. (2d) 120, 262 N. Y. S. (2d) 463, 209 N. E. (2d) 792; Macey v. Rozbicki, 18 N. Y. (2d) 289, 274 N. Y. S. (2d) 591, 221 N. E. (2d) 380. But in each of these cases *both* parties were residents of the forum state. This is also true of Wilcox v. Wilcox, 26 Wis. (2d) 617, 633, 133 N. W. (2d) 408, 416, where the Wisconsin court in an opinion written by Mr. Justice Heffernan said:

"Courts are instruments of state policy and it is for the legislature, when it has spoken, subject to the constitution, to determine the legal standards to be applied in allowing recovery in a negligence case. Our legislature has not seen fit to require that a host be grossly negligent for a guest to recover. Where all the policy factors combine in the determination that Wisconsin is the state most intimately and significantly concerned with the disposition of an issue in a lawsuit, it would be contrary to our legislative policy to apply other than Wisconsin law to the issues thus affected."

But can it be said in this case that Minnesota is the state most intimately and significantly concerned with the disposition of the key issue in this lawsuit?

Clark v. Clark, 107 N. H. 351, 222 A. (2d) 205, decided August 31, 1966, is a particularly helpful opinion. In that decision, Mr. Chief Justice Kenison advances these propositions:

(1)   The old rule of law that the place of the wrong is to be applied in tort actions has been rejected by all authorities in the field and by every American court which has reexamined the matter thoroughly in the last decade.

(2)   Some jurisdictions have undertaken to alleviate the consequences of strict adherence to the old rules of conflicts by casting the issue in a solution-yielding mould. (An example would be to declare the relationship of passenger and host a matter of contract and then apply the law of the state where the contract was made in accord with the general rule of conflicts applicable in contract cases.)

(3)    Instead, choice-of-law decisions should be made by analyzing the specific problem involved in terms of such considerations as:

(a)    The advantage of a rule which is predictable by parties concerned with the effect of it upon their actions.

(b)    The necessity of respect by each state for the policies and interests of every other state having contacts with the controversy.

(c)    The effect of the choice of law upon the judicial burden in the forum state.

(d)    The relationship between established public policy in the forum state and the alternative conflicting rules which could be applied.

(e)    The relative soundness of the alternative rules as instruments for the resolution of the particular controversy on a reasonable basis.

The process suggested by Mr. Chief Justice Kenison is one we approximated in deciding the Kopp case. We recognized there that the automobile host-guest relationship is generally assumed without predicting the effect of a guest statute. We paid deference to the right of every state to control the manner in which vehicles are operated on its highways, but observed that our adoption of the guest statute of the state where an accident occurs does not further this interest. We considered and discounted the perjury hazard in guest-passenger situations. We did not note there, as we might have, that Minnesota courts can apply the test of liability prevailing in guest-statute states without serious trouble although the trial judges of Minnesota will naturally be more familiar with the common-law rule of ordinary negligence generally applicable. We said there, in effect, that a consideration of Minnesota's public policy in this area and our own conception of the relative soundness of the alternative rules militated in favor of application of the forum test for liability.

We do not believe that the facts which distinguish the present problem from that presented in the Kopp case (considered in light of the standards outlined) justify our acceptance of the guest statute as a rule for decision here when we rejected it there. It is true that defendant is a resident of North Dakota; the vehicle involved is garaged in that state; and the insurance was obtained by an employer having a principal place of business there. But these facts add nothing to the case for guest-statute application either as to predictability of result or as a help to North Dakota's task of

regulating traffic upon its highways. When the plaintiff and the defendant met at the parking lot in Breckenridge, neither of them was concerned as to whether the North Dakota guest statute would or would not be applicable in the event of an accident. We can conceive of no policy of the State of North Dakota in so far as public safety is concerned which will be furthered if this defendant is excused from liability for the damages which resulted when, without apparent excuse or justification, he permitted his car to leave the traveled portion of the road and overturn in the abutting ditch. It is at least speculative that the insurer of the North Dakota employer would have expected a higher premium to cover this particular vehicle if the application of Minnesota law of negligence was anticipated when the insurer knew or should have been informed that the principal business use of this vehicle was to have been on Minnesota highways. A North Dakota resident operating a vehicle equipped with Minnesota license plates under a Minnesota driver's license does not speak with compelling persuasiveness when he protests the application of Minnesota law in a Minnesota court as the test for liability for an injury to his Minnesota guest on a pleasure trip which began in Minnesota and which was to have ended here but which, more by chance than by design, terminated, when the tort occurred, on a road separated by a river and a few miles from the territorial boundaries of this jurisdiction.

Whatever doubt we might have on the subject seems to us to be overcome by the consideration that the application of a guest statute in a situation such as this produces a result inconsistent with current conceptions. In the words of Mr. Chief Justice Kenison in the Clark case (107 N. H. 357, 222 A. [2d] 210):

"* * * No American state has newly adopted a guest statute for many years. Courts of states which did adopt them are today construing them much more narrowly, evidencing their dissatisfaction with them. * * * Though still on the books, they contradict the spirit of the times. * * * Unless other considerations demand it, we should not go out of our way to enforce such a law of another state as against the better law of our own state."

Reversed and new trial granted.