ANNE L. MILKOVICH v. ERMA SAARI
AND ANOTHER.

203 N. W. 2d 408.

January 5, 1973—No. 43667.

*Lindquist & Vennum* and *Daryle L. Uphoff*, for appellants. *Palmer, Hood, Crasweller & McCarthy* and *Robert H. Hood*, for respondent.

TODD, JUSTICE.

Defendants appeal from an order of the trial court denying their motion to dismiss plaintiff's complaint for failure to state a cause of action because the law of Ontario, where plaintiff and defendants reside, has a guest statute requiring proof of gross negligence, which was not alleged. Defendants further appeal from the granting of plaintiff's motion to strike their affirmative defense that the law of Ontario should apply. The trial court certified the question as important and doubtful. We affirm.

Plaintiff and both defendants are residents of Thunder Bay (formerly Port Arthur), Ontario, Canada. On November 8, 1968, they left Thunder Bay for Duluth, Minnesota, to shop and attend a play. The car belonged to defendant Erma Saari, who drove the first part of the trip. At the United States Customs House at Pigeon River, Minnesota, defendant Judith Rudd took over the driving, and about 40 miles south of the border the car left the road and crashed into rock formations adjacent to the road, causing the injuries to plaintiff. Plaintiff was hospitalized at Duluth for approximately 1½ months and thereafter returned to her home in Thunder Bay.

Defendant Saari's automobile was garaged, registered, and insured in the Province of Ontario, Canada. Ontario has a guest statute, and if the law of Ontario is to be applied to this case, plaintiff would have to establish gross negligence in order to recover. Minnesota does not have a guest statute, and the rulings of the court would be correct if Minnesota law is to apply.

The field of "conflict of laws" in tort matters has undergone dramatic change in the last decade. Prior to that time, most courts were willing to accept the doctrine of "lex loci," which proved to be easy to administer since the happening of an acci-

dent in any particular forum established that the law of the place of the accident would apply. Criticism of this entrenched doctrine mounted from all sides. The issue was met head on in Babcock v. Jackson, 12 N. Y. 2d 473, 240 N. Y. S. 2d 743, 191 N. E. 2d 279, 95 A. L. R. 2d 1 (1963). There the New York Court of Appeals, in an opinion by Mr. Justice (now Chief Justice) Fuld, held that where plaintiff was a New York resident and commenced a trip in the State of New York with the defendant, a New York resident, and was involved in an accident in Ontario, Canada, plaintiff was entitled to have her claim decided under the law of the State of New York. The legislature of New York had rejected the guest statute, which was the law of Ontario and the law of the place of the accident. The decision was premised on the doctrine that New York had the most significant contacts with the litigants and that consequently New York law should apply. The court further held that the law of Ontario, the place of the accident, should not apply, since Ontario had no significant contact with the litigants.

Application of Babcock to different fact situations has been confusing. The Babcock decision left open the question of the manner of determining each state's interest in a particular situation, and it did not discuss the issues of whether the relationship of the parties is established at the commencement of the trip and whether the relationship continues to be governed by the law of the state in which it was established or changes as state or international lines are crossed. This confusion is best illustrated in Dym v. Gordon, 16 N. Y. 2d 120, 262 N. Y. S. 2d 463, 209 N. E. 2d 792 (1965). In that case, plaintiffs were both New York residents and students in Colorado. They met in Colorado and the plaintiff was injured in an automobile accident in which she alleged the defendant was negligent. New York again had no guest statute, but Colorado did. The New York court in a divided opinion held that the Colorado law was applicable and placed emphasis on the fact that the parties met in Colorado and established their relationship as guest and host in Colorado. This

seemed to introduce a new doctrine, namely, "seat of the relationship," into the law. This doctrine was short-lived and was apparently put to rest in Macey v. Rozbicki, 18 N. Y. 2d 289, 274 N. Y. S. 2d 591, 221 N. E. 2d 380 (1966). In Macey the New York court shifted the emphasis away from the seat of the relationship and seemed to focus more on the common domicile of guest and host as determinative of the applicable law. In a concurring opinion Mr. Justice Keating more forcefully argued that the court "should no longer follow the decision in Dym v. Gordon [*supra*]." 18 N. Y. 2d 298, 274 N. Y. S. 2d 598, 221 N. E. 2d 385.

Finally, the New York court was confronted with the exact factual situation we have in this case. In Kell v. Henderson, 47 Misc. 2d 992, 263 N. Y. S. 2d 647 (1965), affirmed, 26 App. Div. 2d 595, 270 N. Y. S. 2d 552 (1966), the New York Supreme Court allowed the plaintiff to proceed under New York law, and the Appellate Division affirmed. In that case, the plaintiff, a minor child, in the company of the two defendants, a mother and son, set out from Ontario, Canada, to tour nearby New York. The plaintiff and the defendants were all residents of Ontario. The car was garaged in Ontario and insured in Ontario. While being driven in New York by the defendant son, the car went out of control and careened off the highway, striking a bridge and injuring Miss Kell. The defendants in that case argued that under the Babcock decision the most significant interests were in Ontario and not New York and therefore the plaintiff could not recover by reason of the Ontario guest statute. The New York Supreme Court, after pointing out that the state had significant interests by reason of its traffic vehicle regulations, its public policy regarding guest statutes, and the fact that its laws applied to residents and nonresidents equally, stated (47 Misc. 2d 993, 263 N. Y. S. 2d 649):

"The conflict-of-laws doctrine enunciated in *Babcock* (*supra*) recognizes that we no longer mechanically turn to the common-law rule of *lex loci delicti* in tort cases. The courts now have adopted a rule of choice of law in a conflict situation which looks

to reason and justice in its selection of which law is to apply and which fits the needs of today's changing world where frequent travel is the rule, rather than the exception."

This case would seem to have completed the cycle for New York in moving fully away from the lex loci doctrine. However, in Arbuthnot v. Allbright, 35 App. Div. 2d 315, 316 N. Y. S. 2d 391 (1970), the New York Supreme Court, Appellate Division, again sitting in the same division but with different justices, sought to distinguish Kell v. Henderson, *supra,* on a procedural issue which, in fact, was an *additional* basis for the decision which had been advanced in concurring opinions in both the lower court and the appellate division. Under the facts of Arbuthnot, which are indistinguishable from the facts in Kell, the court held that the Ontario law should apply. The New York Court of Appeals has apparently not yet acted on this conflict but hopefully will dispose of the conflicting cases and probably reverse the Arbuthnot case and support the Kell decision, not only because of the shallowness of the opinion in Arbuthnot, but also because of the substantial backing Kell has received from various law commentators and professors.[1]

While New York was experiencing its difficulties in the changing field of conflict of laws, a fact situation arose in a case appealed to the Supreme Court of New Hampshire, which allowed its learned Mr. Chief Justice Kenison to enunciate a doctrine which has been followed by many courts throughout the country, including our own Minnesota court. In Clark v. Clark, 107 N. H. 351, 222 A. 2d 205 (1966), a husband and wife had left their home in New Hampshire to proceed to another part of New Hampshire for a visit and were to return that evening. Part of their trip took them through Vermont, where the accident occurred. The plaintiff wife brought action in New Hampshire

---

[1] Rosenberg & Trautman, *Two Views on Kell v. Henderson,* 67 Col. L. Rev. 459; Leflar, *Conflicts Law: More on Choice-Influencing Considerations,* 54 Calif. L. Rev. 1584, 1593 to 1595.

against her husband and sought an order of the court that the substantive law of New Hampshire governed the rights of the parties. New Hampshire had no guest statute and Vermont did. In a carefully reasoned opinion, Mr. Chief Justice Kenison traced the history and difficulty of the lex loci rule. He then proceeded to adopt five basic "choice-influencing considerations" to be applied to these cases. The basic premises for the considerations adopted by the court were first proposed by Professor Robert Leflar in his article, *Choice-Influencing Considerations in Conflicts Law,* 41 N. Y. U. L. Rev. 267, 279, and briefly stated, the tests selected by the New Hampshire court are: (a) Predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task; (d) advancement of the forum's governmental interests; and (e) application of the better rule of law.

The court pointed out that the first three tests caused very few problems. Predictability of results can be overlooked since basically this test relates to consensual transactions where people should know in advance what law will govern their act. Obviously, no one plans to have an accident, and, except for the remote possibility of forum shopping, this test is of little import in an automobile accident case. As to the second consideration, the court found little trouble since under this heading no more is called for than that the court apply the law of no state which does not have substantial connection with the total facts and the particular issue being litigated. The third point, simplification of the judicial task, poses no problem since the courts are fully capable of administering the law of another forum if called upon to do so.

The court observed that in selecting the law of a particular case the last two considerations carry most weight. In the case before it, the court found adequate governmental interest in applying its state's law and concluded that the New Hampshire law was unquestionably the better law and should be applied.

■ During this same period, the law of the State of Minne-

sota has undergone a change. Minnesota had followed the doctrine of lex loci as recently as our decision in Phelps v. Benson, 252 Minn. 457, 90 N. W. 2d 533 (1958), where we reiterated our adherence to that doctrine.

On April 1, 1966, our court handed down two decisions which indicated our determination to replace lex loci with a more rational choice-of-law methodology: Balts v. Balts, 273 Minn. 419, 142 N. W. 2d 66; and Kopp v. Rechtzigel, 273 Minn. 441, 141 N. W. 2d 526. In these cases, we cited with approval Babcock v. Jackson, *supra,* and, in Balts, we quoted with approval language from McSwain v. McSwain, 420 Pa. 86, 93, 215 A. 2d 677, 681 (1966):

"* * * Time found the rule [of lex loci delicti] increasingly criticized as a mechanical methodology, predicated on the outmoded 'vested right' theory, and emphasizing certainty and predictability at the expense of other, frequently more relevant considerations." 273 Minn. 425, 142 N. W. 2d 70.

In Balts, we applied a newly adopted doctrine which allowed an action by a parent against a child for tort and applied this Minnesota rule of law to Minnesota residents who were injured in an accident in Wisconsin, whose law did not permit such a recovery.

In the Kopp case, despite the existence of a guest statute in South Dakota, we applied Minnesota common-law rules of negligence and allowed recovery by a Minnesota plaintiff against a Minnesota defendant who was injured in a South Dakota accident where the trip originated in Minnesota and the parties intended to return to Minnesota.

We were next faced with the problem in Schneider v. Nichols, 280 Minn. 139, 158 N. W. 2d 254 (1968). In that case, the defendant had lived in Moorhead, Minnesota, but was at the time of the accident a resident of Fargo, North Dakota. He was employed by a national concern as a traveling sales representative from its branch office in Fargo. The employer provided liability in-

surance for defendant's vehicle in Fargo and the car was garaged in that city. The automobile in question carried Minnesota license plates and the defendant had a Minnesota driver's license. On the date of the accident, he met the plaintiff in a parking lot at Breckenridge, Minnesota. Plaintiff was a resident of the State of Minnesota. The parties had no preplanned itinerary, but during the course of the evening traveled on roads in both Minnesota and North Dakota, since the communities involved are situated on the border. The accident occurred in North Dakota. Plaintiff was hospitalized and treated at Breckenridge, and an action was commenced by the plaintiff in the Minnesota courts. Defendant claimed that no cause of action existed because North Dakota had a guest statute. Our court rejected this argument and applied Minnesota rules of common-law negligence. In so doing, our court quoted with approval the choice-influencing considerations laid down by Mr. Chief Justice Kenison in Clark v. Clark, *supra,* and also quoted his statement regarding guest statutes (280 Minn. 146, 158 N. W. 2d 259) :

"* * * No American state has newly adopted a guest statute for many years. Courts of states which did adopt them are today construing them much more narrowly, evidencing their dissatisfaction with them. * * * Though still on the books, they contradict the spirit of the times. * * * Unless other considerations demand it, we should not go out of our way to enforce such a law of another state as against the better law of our own state."

We next considered this problem in Bolgrean v. Stich, 293 Minn. 8, 196 N. W. 2d 442 (1972). In that case, the defendant, a Minnesota resident, called the plaintiff, a former Minnesota resident who was then living in Fargo, for a date. Defendant's automobile was garaged, licensed, and insured in Minnesota. The defendant picked up the plaintiff and proceeded to a dance in South Dakota where the accident occurred. We allowed the plaintiff to commence the action in Minnesota, where she had returned to live at the time of the litigation, and rejected the

application of the guest statutes of both North and South Dakota. In so doing, we indicated the Minnesota court would group the contacts of the different states with the controversy in order to find the "center of gravity." We again relied on the better-law consideration and said (293 Minn. 10, 196 N. W. 2d 444):

"The fact that we believe that Minnesota has the better law reinforces our decision. The legislature of this state has shown its antipathy toward the guest statute by refusing to enact one."

Finally, in Allen v. Gannaway, 294 Minn. 1, 199 N. W. 2d 424 (1972), we reaffirmed the position we adopted in Balts, Kopp, Schneider, and Bolgrean, and applied Minnesota law to a Nevada automobile accident involving residents of Minnesota and a Massachusetts resident who had been attending college in Minnesota.

■ The facts of this case now complete the cycle. The choice-influencing considerations proposed by Professor Leflar and set forth by Mr. Chief Justice Kenison in Clark v. Clark, *supra,* were adopted by our court in Schneider v. Nichols, *supra,* indicating our preference for the better-law approach and our rejection of the guest statute concept of various jurisdictions. We have come to the conclusion in this case that plaintiff should be allowed to proceed with her action under our common-law rules of negligence and should not be bound by the guest statute requirements of the Province of Ontario.

■ As we indicated earlier in this opinion, the New York case of Kell v. Henderson, *supra,* is on "all fours" with the facts of this case. Professor Leflar, whose original article provided the groundwork for the opinion of Mr. Chief Justice Kenison in Clark v. Clark, *supra,* which is the foundation of the approach our court has taken in these matters, had occasion to comment on the effect of Kell v. Henderson, *supra,* in an article entitled, *Conflicts Law: More on Choice-Influencing Considerations,* 54 Calif. L. Rev. 1584. Professor Leflar set forth the fact situation of the Kell case. He then proceeded to analyze the decision in the

light of these choice-influencing considerations. He pointed out that predictability was irrelevant since automobile accidents are seldom planned, and that, since the accident occurred in New York, that state was an appropriate jurisdiction in which to try the lawsuit. He further pointed out that neither international order or ease of judicial administration had much bearing on the case.

■ On the consideration of governmental interest, Professor Leflar found adequate support for the decision rendered by the New York court. In so doing, he rejected the concept of the practical interest of the state in the supervision and safety of its state highways since the rule in question, unlike rules of the road and definitions of negligence, does not bear upon vehicle operation as such. Instead, he pointed out that the factor to be considered is the relevant effect the New York rule has on the duty of host to guest and the danger of collusion between them to defraud the host's insurer. New York's interest in applying its own law rather than Ontario law on these issues, he found to be based primarily on its status as a justice-administering state. In that status, it is strongly concerned with seeing that persons who come into the New York courts to litigate controversies with substantial New York connections have these cases determined according to rules consistent with New York concepts of justice, or at least not inconsistent with them. That will be as true for non-domiciliary litigants as for domiciliaries. This interest will not manifest itself clearly if the out-of-state rule does not run contrary to some strong socio-legal policy of the forum, but it will become a major consideration if there is such a strong opposing local policy.

Professor Leflar then pointed out that this consideration leads to preference for what is regarded as the better rule of law, that New York has such a preference, and that it is a vigorous one. He concluded that the combination of the last two items, governmental interest and better rule of law, called for the application of New York law. His statements and reasoning apply equally

to the facts of this case and lead to the conclusion that Minnesota should apply its better rule of law and should allow plaintiff to proceed with her action.[2]

■ Strong support for the better-rule-of-law concept appears in an article by Professor Albert A. Ehrenzweig, *"False Conflicts" and the "Better Rule": Threat and Promise in Multistate Tort Law*, 53 Va. L. Rev. 847, 853, in which he wrote:

"Express recognition of the forum's right and duty to apply its own better rule as such is an ancient tradition which apparently succumbed to the 19th century's internationalist conceptualism. We need only remember the priority given by early statutists to the *statuta favorabilia* of the forum against foreign *statuta odiosa*, or Master Aldricus' choice of the custom *'potior et utilior,'* or Byzantium's *philanthropoteron*. The widespread disregard of foreign Sunday laws, fellow-servant rules, and married women's incapacities, as well as statutes of frauds, and limitations on wrongful death damages, may serve as modern examples.

"Now, we shall, of course, not 'ask the judge simply to express a preference between two rules.' This would, indeed, 'abolish our centuries-old subject.' But we should face the 'fact of life' that judges, our best judges, often take advantage of the 'looseness in the joints of the [choice-of-law] apparatus,' or employ 'manipulative techniques such as characterization and renvoi,' and all-purpose tools such as the 'most significant relationship,' in order to substitute a better foreign rule for much 'that is archaic and foolish' in their own law.

"Thus one cannot easily suppress the suspicion, or should we say the hope, that it was the application of a 'better-rule' approach rather than the invoked non-rule of the 'most significant relationship' that led the New York Court of Appeals in one case

---

[2] Other writers, in commenting on Kell v. Henderson, 47 Misc. 2d 992, 263 N. Y. S. 2d 647 (1965), affirmed, 26 App. Div. 2d 595, 270 N. Y. S. 2d 552 (1966), came to the same conclusion. Rosenberg & Trautman, *Two Views on Kell v. Henderson,* 67 Col. L. Rev. 459.

to permit 'a substantial recovery' for a crash-death under Pennsylvania law rather than to limit damages under Maryland law, and in another case to allow a direct action against a liability insurer under Puerto Rico law. And may we not suspect, or should we say hope, that it was preference for the better rule rather than the professed belief in the *lex contractus* of a spurious 'center of gravity' that led the Wisconsin Supreme Court to apply to a Wisconsin automobile accident of Wisconsin domiciliaries a Minnesota rule more favorable to the victim than forum law? Or should we seriously assume that the court would have found the 'center of gravity' in Minnesota if the better rule had been its own? And would the English Chancery have applied as 'substantive' rather than 'procedural' the German law regarding the survival presumption in a common disaster if English law had adopted the 'better' German rule of simultaneous death rather than the obsolete presumption of the elder's survival?

"Whether or not general express recognition of the 'better-rule' approach can be justified at present, we must at least acknowledge the validity of the proposition advanced by Currie that transient ('disinterested') third states, having no incentive to follow the 'stay-at-home' trend, are likely to choose what they consider the better of two foreign rules. Moreover, admiralty courts in their more forthright manner have sometimes acknowledged their bias toward a 'better rule.' And may we not ultimately in part explain the great willingness of American courts to permit parties to choose their own law in terms of a similar better-rule approach?

"Although the 'better-rule' principle is not generally capable of replacing conflicts rules, I see little justification within the limits set by settled law for the prevailing horror against the recognition of that principle as one of many determining the growth of conflicts law. The very growth of common-law rules is based on the judges' choice between competing principles, choices expressed in the process of overruling or distinguishing earlier judicial pronouncements. In purely domestic cases open

admission of this technique is often hampered by justified respect for 'certainty' and the parties' expectations, a respect which also accounts, of course, for both legislative and judicial reluctance to act with retroactive effect. In cases involving foreign elements, however, this consideration often should be, and generally is, less relevant, and the path is open for the courageous judge to prepare the ground for a domestic reform by open preference for 'better' foreign solutions."

In Schneider v. Nichols, 280 Minn. 139, 144, 158 N. W. 2d 254, 257, we quoted with approval language from Wilcox v. Wilcox, 26 Wis. 2d 617, 633, 133 N. W. 2d 408, 416 (1965), an opinion written by Mr. Justice Heffernan. Plaintiff, in support of her position, relies on this case and cites two other Wisconsin cases, Heath v. Zellmer, 35 Wis. 2d 578, 151 N. W. 2d 664 (1967), and Zelinger v. State Sand & Gravel Co. 38 Wis. 2d 98, 156 N. W. 2d 466 (1968).

Defendants seek to distinguish these cases by pointing out that in each of them there was an interested Wisconsin party in the litigation. However, in Conklin v. Horner, 38 Wis. 2d 468, 157 N. W. 2d 579 (1968), the Wisconsin court was confronted with a fact situation again exactly on all fours with our situation. There the court, speaking through Mr. Justice Heffernan, adopted the better-rule approach which we have adopted here and, in a well-reasoned opinion, arrived at the same conclusion that this court has. In the Wisconsin case, the litigants were all residents of the State of Illinois; the automobile in question was licensed and garaged in Illinois; the trip originated in Illinois with the intent and purpose to return to Illinois; and the insurance policy was issued in the State of Illinois. Illinois has a guest statute; Wisconsin does not. The court in that case first considered the problem of labeling any procedure in determining rules of law to be applied, saying (38 Wis. 2d 473, 157 N. W. 2d 581):

"The defendants' claim is based upon our decision in Wilcox v. Wilcox (1965), 26 Wis. 2d 617, 133 N. W. 2d 408, where we

abandoned the choice-of-law rule of lex loci delicti and adopted in its stead a more flexible methodology based upon the qualitative analysis of the contacts that one or more jurisdictions might have with the relevant facts. We adopted the general approach of Babcock v. Jackson (1963), 12 N. Y. 2d 473, 240 N. Y. S. 2d 743, 191 N. E. 2d 279, 95 A. L. R. 2d 1, and the basic principle of Tentative Draft No. 9, Restatement, Conflicts of Laws 2d, which may be denominated as the 'center of gravity,' 'grouping of contacts,' 'dominant interest,' 'interest oriented,' or 'interest analysis' approach. Zelinger v. State Sand & Gravel Co., [38 Wis. 2d] 98, 156 N. W. 2d 466 [1968]. *We emphasized that what we adopted was not a rule, but a method of analysis that permitted dissection of the jural bundle constituting a tort and its environment to determine what elements therein were relevant to a reasonable choice of law.*

"When the Wilcox case is so viewed, it is apparent that we cannot conclude that, when one set of facts leads logically to the law of the forum, the reverse, or the apparent reverse, of these facts will lead to the opposite conclusion." (Italics supplied.)

We, too, adopt this concept that what the court is considering is a methodology and not a rule.

The Wisconsin court then proceeded to adopt the choice-influencing considerations of Professor Leflar as expounded by Mr. Chief Justice Kenison in Clark v. Clark, *supra*. The court considered the various rules in the same manner that Professor Leflar applied them to Kell v. Henderson, *supra*. It should be noted that the Wisconsin court gave much more credence to the state interest in its highways and state regulations than Professor Leflar would ascribe. Following this reasoning process, the Wisconsin court concluded that the Wisconsin law was the better law to apply under the circumstances.

We find then that in Conklin the Wisconsin court, premising its choice-of-law methodology on the factors initially propagated by Professor Leflar and Mr. Chief Justice Kenison of New Hampshire, has resolved substantially the same fact situation

as now appears before us by applying the common-law liability of the forum and place of the accident rather than the guest statute of the residence of the parties. See, also, Kell v. Henderson, *supra.* Since our methodology owes a similar debt to Professor Leflar and Mr. Chief Justice Kenison, we find their reasoning relevant and persuasive.

■ We have already noted the relative unimportance of predictability of results to tort actions. Similarly, the simplification of the judicial task need not concern us to any great extent since we have no doubt our judicial system could in the appropriate case apply the guest statute rule of gross negligence as readily as our common-law rule. Interstate and international relations are maintained without harm where, as here, the forum state has a substantial connection with the facts and issues involved. This requirement is amply met by the fact that the accident occurred in Minnesota, as well as by the fact that plaintiff was hospitalized for well over a month in the state.

The compelling factors in this case are the advancement of the forum's governmental interests and the application of the better law. While there may be more deterrent effect in our common-law rule of liability as opposed to the guest statute requirement of gross negligence, the main governmental interest involved is that of any "justice-administering state." Leflar, *Conflicts Law: More on Choice-Influencing Considerations,* 54 Calif. L. Rev. 1584, 1594. In that posture, we are concerned that our courts not be called upon to determine issues under rules which, however accepted they may be in other states, are inconsistent with our own concept of fairness and equity. We might also note that persons injured in automobile accidents occurring within our borders can reasonably be expected to require treatment in our medical facilities, both public and private. In the instant case, plaintiff incurred medical bills in a Duluth hospital which have already been paid, but we are loath to place weight on the individual case for fear it might offer even minor incentives to "hospital shop" or to create litigation-directed pressures on the

payment of debts to medical facilities. Suffice it to say that we recognize that medical costs are likely to be incurred with a consequent governmental interest that injured persons not be denied recovery on the basis of doctrines foreign to Minnesota.

In our search for the better rule, we are firmly convinced of the superiority of the common-law rule of liability to that of the Ontario guest statute. We can find little reason for the strict limitation of a host's liability to his guest beyond the fear of collusive suits and the vague disapproval of a guest "biting the hand that feeds him." Neither rationale is persuasive. We are convinced the judicial system can uncover collusive suits without such overinclusive rules, and we do not find any discomfort in the prospect of a guest suing his host for injuries suffered through the host's simple negligence.

Accordingly, we hold that Minnesota law should be applied to this lawsuit.

Affirmed.

PETERSON, JUSTICE (dissenting).

The "center-of-gravity-of-the contacts" theory of conflict of laws has been adopted in this state, and we have applied it in situations where an automobile trip started and was intended to terminate in this state, where the host-guest relationship was formed in this state, or where the place of registration or garaging of the automobile was in this state. Balts v. Balts, 273 Minn. 419, 142 N. W. 2d 66 (1966); Kopp v. Rechtzigel, 273 Minn. 441, 141 N. W. 2d 526 (1966); Schneider v. Nichols, 280 Minn. 139, 158 N. W. 2d 254 (1968); Bolgrean v. Stich, 293 Minn. 8, 196 N. W. 2d 442 (1972); Allen v. Gannaway, 294 Minn. 1, 199 N. W. 2d 424 (1972). Until today, however, we have not considered the mere happening of an automobile accident in this state a sufficient contact with the forum to establish the center of gravity here. In my view, the center of gravity is in Ontario, not Minnesota.

172

The "choice-influencing factor" in the majority opinion is simply that Minnesota law is "better law" because, unlike Ontario law, this state has no guest statute. Notwithstanding our undoubted preference for this forum's standard of liability, I am not persuaded that decision should turn on that factor alone. We may assume that these Canadian citizens have concurred in the rule of law of their own government as just, so the law of this American forum is not for them the "better" standard of justice. The litigation, indeed, was first initiated by plaintiff in the courts of Ontario and was later commenced in Minnesota as an act of forum shopping.

Our own cases, of course, do not compel such a decision. Two cases from other jurisdictions that are "on all fours" are not persuasive. The New York case of Kell v. Henderson, 47 Misc. 2d 992, 263 N. Y. S. 2d 647 (1965), affirmed, 26 App. Div. 2d 595, 270 N. Y. S. 2d 552 (1966), is not the decision of that state's highest court and, in addition, is at odds with the later case of Arbuthnot v. Allbright, 35 App. Div. 2d 315, 316 N. Y. S. 2d 391 (1970). The Wisconsin case of Conklin v. Horner, 38 Wis. 2d 468, 157 N. W. 2d 579 (1968), is a final expression of its highest court, based upon a well-written majority opinion of Mr. Justice Heffernan. I nevertheless am more persuaded by the dissenting opinion of two justices. Mr. Chief Justice Hallows, in dissent, appropriately observed that the so-called "methodology of analysis" is really little more than a mechanical application of the law of the forum. As he wrote (38 Wis. 2d 491, 157 N. W. 2d 590): "If we are going to be consistent only in applying the law of the forum, then we are merely giving lip service to the new 'significant contacts' rule."

MR. JUSTICE OTIS took no part in the consideration or decision of this case.