**Obder STANDAL, Sr., Appellant,**

v.

**ARMSTRONG CORK COMPANY, et al., Defendants,**

and

**Nicolet, Inc., Respondent.**

**No. C1–84–615.**

Court of Appeals of Minnesota.

Oct. 16, 1984.

Mike Sieben, Hertogs, Fluegel, Sieben, Polk, Jones & Laverdiere, Hastings, for appellant.

Hansen, Dordell, Brandt, Odlaug, St. Paul, for Armstrong Cork Co.

Meagher, Geer, Markham, Adamson, Flaskamp & Brennan, Minneapolis, for A.H. Bennett Co.

Cahill, Jeffries & Maring, Moorhead, for Celotex Corp.

Arndt, Benton, Plasens & Peister, Minneapolis, for Eagle Pitcher Industries, Inc.

Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for Keene Corp.

Pustorino & Pederson, Minneapolis, for MacArthur Corp.

Faegre & Benson, Minneapolis, for Owen Corning Fiberglas Corp.

Dorsey & Whitney, Minneapolis, for Owens Illinois, Inc.

McEachron & McEachron, Bloomington, for Southern Minnesota Insulation.

Thomas D. Jensen, Lommen, Nelson, Sullivan & Cole, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Odber Standal, Sr. brought a product liability action for injuries suffered as a result of exposure to asbestos fibers contained in products sold by several manufacturers, including Keasbey & Mattison Co. Standal sought to hold Nicolet, Inc. liable as a successor to Keasbey. The trial court granted summary judgment finding Nicolet had no liability as a successor to Keasbey. Standal appeals. We reverse.

## FACTS

Standal is a Minnesota construction worker who suffers from asbestosis. In 1942–1943 he was exposed to asbestos-containing insulation manufactured by Keasbey's industrial products division. The facility which produced the insulation was located in Pennsylvania.

In 1962, Nicolet bought all of the assets of Keasbey's industrial products division. Nicolet continued to produce and market asbestos-containing insulation under the Keasbey name. Certain-Teed Products Corp. purchased assets of other Keasbey divisions and used the Keasbey name in the manufacturing and marketing of other asbestos-containing products. Keasbey was liquidated and dissolved following the sale of its assets.

## ISSUE

Did the trial court err in its choice of law concerning Nicolet's successor liability for injuries caused by asbestos-containing insulation produced by Keasbey?

## ANALYSIS

The facts in this case are undisputed. We are called upon only to decide whether Minnesota's or Pennsylvania's law of corporate successor liability applies.

Minnesota has adopted Professor Robert Leflar's five point choice of law analysis. Leflar's five "choice-influencing considerations" are as follows:

(a) Predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task; (d) advancement of the forum's governmental interests; and (e) application of the better rule of law.

*Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973).

In this case, maintenance of interstate order and simplification of the judicial task are of negligible importance. Maintenance of interstate order requires only that the state whose laws are ultimately applied have a substantial · connection with the facts and the particular issue. *Milkovich,*

295 Minn. at 161, 203 N.W.2d at 412. Both Minnesota and Pennsylvania have sufficient contacts with the case to satisfy the requirement. Furthermore, Minnesota courts are capable of administering the law of another forum. Simplification of the judicial task poses no problem. *Id.*

■ Application of Pennsylvania law would further predictability. Minnesota generally upholds express choice of law contract provisions. *Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n. 1 (Minn.1980). Nicolet and Keasbey expressly provided that Pennsylvania law should govern the transfer which gives rise to this action. Nicolet sought to be governed by Pennsylvania corporate successor liability law in several factually similar cases arising before Pennsylvania's adoption and expansion of the product-line rule. *See e.g. Osteen v. Combustion Engineering, Inc.*, No. CV79–0–47 (D.Neb. Sept. 24, 1981). Therefore, the choice of Pennsylvania law would be consistent with the expectations of the parties. Application of Pennsylvania law by courts in all states in which Keasbey asbestosis victims bring suit would also improve predictability and consistency among states.

The choice of Pennsylvania law· also would further Minnesota's interest in providing compensation for resident tort victims. *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43 (Minn.1979), aff'd, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

Minnesota follows the traditional test of corporate successor liability.

> [W]here one corporation transfers its assets to another corporation, absent consolidation, merger, or a mere continuation of the selling corporation such as reorganization, the receiving corporation is not responsible for the debts of the transferring corporation except (a) where the purchaser agrees, expressly or impliedly, to assume such debts, or (b) the transfer of assets is entered into for inadequate consideration, or otherwise fraudulently, in order to escape liability for such debts.

*State Bank of Young America v. Vidmar Iron Works, Inc.*, 292 N.W.2d 244, 251

(Minn.1980) (quoting *J.F. Anderson Lumber Co. v. Myers*, 296 Minn. 33, 40–41, 206 N.W.2d 365, 370 (1973)). Standal concedes that under this traditional test Nicolet has no successor liability for injuries caused by insulation manufactured by Keasbey.

■ However, Nicolet would have successor liability under Pennsylvania's "product-line" rule. *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (Pa.Super.Ct.1981); *Amader v. Pittsburg Corning Corp.*, 546 F.Supp. 1033 (E.D.Pa.1982).

*Dawejko* discusses several factors relevant in determining whether to impose liability on a successor corporation, including:

1. whether the successor corporation advertised itself as an ongoing enterprise *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir.1974);

2. whether it maintained the same product, name, personnel, property, and clients *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976);

3. whether it acquired the predecessor corporation's name and goodwill, and required the predecessor to dissolve *Knapp v. North Am. Rockwell Corp.*, 506 F.2d 361 (3rd Cir.1974), *cert. denied. North American Rockwell Corp.*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975).

The Pennsylvania Superior Court consciously chose not to include such details in its formulation of the rule. Instead it adopted the broad language used in *Ramirez v. Amsted Ind., Inc.*, 86 N.J. 332, 431 A.2d 811 (1981).

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

86 N.J. at 358, 431 A.2d at 825.

*Amader v. Pittsburg Corning Corp.*, 546 F.Supp. 1033 (E.D.Pa.1982), a federal

case interpreting Pennsylvania law, extended the doctrine to cover purchase of a division rather than an entire company. In *Amader*, the successor did not acquire all of the assets of its predecessor; it acquired only those associated with an asbestos-containing product line. The successor acquired all real estate, fixtures, equipment and machinery, inventories, business records, raw materials, licenses, patents, trademarks and tradenames connected with the product line. The company hired all of its predecessor's employees and used the same customer lists and distributors as its predecessor.

The federal district court held:

Given the fact that Pennsylvania has cautioned against a narrow construction of the product line and has emphasized that the social policies underlying strict liability gain expression through application of this doctrine, we believe that it applies where one corporation acquires a complete product line, including manufacturing and distribution outlets, and continues to manufacture the same product.

*Id.* at 1036–37.

Nicolet bought one of Keasbey's five divisions. It acquired all of the assets of Keasbey's industrial products division, including land, buildings, machinery, equipment, inventories, and business records, materials and supplies, patents and trademarks. It purchased Keasbey's good will and the right to use the Keasbey name. It employed some of Keasbey's personnel. The contract did not require Keasbey to dissolve, but was entered into in anticipation of the company's dissolution. Nicolet assumed responsibility for filling some orders placed with Keasbey. It produced the same sort of asbestos-containing insulation as Keasbey and marketed it under the Keasbey name. Therefore, under Pennsylvania law, Nicolet has successor liability for Keasbey insulation.

Since these factors dictate that Pennsylvania law be applied, we need not address the question of the best rule of law. Concern for the better rule of law is determina-tive only when other considerations leave the choice of law uncertain. *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694 (Minn.Ct.App.1984).

## DECISION

We reverse the summary judgment finding no successor liability by Nicolet and remand the matter for trial. The trial court erred in applying Minnesota rather than Pennsylvania corporate successor liability law. Under Pennsylvania's product-line rule, Nicolet has successor liability for injuries caused by insulation manufactured by Keasbey.

Reversed.