Howard B. CARSTEDT, Appellant,

v.

Gordon L. GRINDELAND, et al., Clean
Print, Inc., Respondents.

No. C3–86–2001.

Court of Appeals of Minnesota.

May 19, 1987.

Herman H. Bains, Williamson, Bains, Moore & Hansen, Minneapolis, for Carstedt.

Robert Lewis Barrows, Leonard, Street & Deinard, Mpls., for Grindeland, et al.

William E. Mullin, Mark P. Hodkinson, Bassford, Heckt, Lockhart & Mullin, Minneapolis, for Clean Print, Inc.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a summary judgment that respondents Steven Grindeland or Clean Print, Inc. (CPI) were not liable to appellant Howard Carstedt under an exclusive license agreement with respondents Gordon Grindeland and Clean Print Systems (CPS). We affirm.

## FACTS

In June 1973, Carstedt executed a license agreement with Gordon Grindeland granting Grindeland the exclusive right to manufacture and sell a decurling device developed by Carstedt. Carstedt received royalties on decurler sales and agreed to pursue patent rights and provide technical assistance in the manufacture, sale, and servicing of the devices.

In later litigation, the exclusive license agreement was upheld, *see Carstedt v. Grindeland*, 306 N.W.2d 105 (Minn.1981) and Grindeland paid all royalties owing under the license agreement. In July 1981, Grindeland's son, Steven, incorporated Clean Print, Inc. (CPI) and purchased assets of his father's printing business, but neither Gordon Grindeland and CPS, nor Steven Grindeland and CPI paid Carstedt any royalties after CPI began manufacturing and selling the devices. Carstedt sued to recover royalties.

Carstedt's first claim was for breach of contract. He alleged that CPI was the same business and a mere continuation of CPS because CPI manufactured and sold decurlers under the same trademark, used substantially the same trade name, used the same business assets, and employed substantially the same persons as CPS. He alleged neither Steven Grindeland nor CPI paid any compensation to Gordon Grindeland or CPS for use of the "Automagic" trademark, the "Clear Print" trade name, or the good will associated with those business properties and that no compensation was paid for other business assets.

Carstedt's also contended that Grindeland fraudulently conveyed CPS to his son for the purpose of avoiding royalty payments to Carstedt.

Finally, Carstedt alleged that Gordon Grindeland not only impliedly assigned, without his permission, the CPS trade name and trademark and the good will associated with those valuable assets to his

son when he did not object to their use by Steven Grindeland and CPI, but that the implied assignment included the use and enjoyment of Carstedt's know-how and technical assistance. Consequently, Carstedt argued the obligation to pay royalties to Carstedt also was impliedly assigned. Because he did not consent to the assignment, Carstedt contends Gordon Grindeland and CPS remain responsible for payment of all royalties generated by the sale of decurlers made by Steven Grindeland and CPI.

## ISSUE

Did the district court err by granting summary judgment?

## ANALYSIS

### Standard of Review

■ Because this is an appeal from a summary judgment, we need determine only whether there are issues of fact to be tried. Minn.R.Civ.P. 56.03; *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). We must resolve all doubts and factual inferences against the moving party. *Id.* Although transferee corporations may be held liable for a transferor corporation's debts and liabilities, the circumstances under which liability will be recognized are limited. *See J.F. Anderson Lumber Co. v. Myers,* 296 Minn. 33, 37, 206 N.W.2d 365, 368 (1973). These are the limitations: (1) the purchaser expressly or impliedly agrees to assume debts; (2) the transaction amounts to a consolidation or merger of the corporation; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the transaction is entered into fraudulently to escape liability for debts; or (5) there is inadequate consideration for the sale or transfer of assets (sometimes incorporated as an element of the other four exceptions). *Id.* at 37–38, 206 N.W.2d at 368–69.

### Contract Breach: "Mere Continuation"

■ Carstedt argues that CPI is a "mere continuation" of Gordon Grindeland's printing business, based upon this conduct of the Grindelands. He notes that CPI began operation without interruption after Gordon Grindeland sold CPS to his son, CPI used the same business premises and telephone as CPS, CPI used the same machine shop and employed substantially the same employees as CPS, and CPI used the same trademark and substantially the same trade name as CPS. Carstedt also alleges that CPI acquired and used certain CPS assets without paying any compensation to Gordon Grindeland or CPS.

*J.F. Anderson Lumber Co.* held that a second corporation was not liable for the debts of the first corporation on facts similar to this case and specifically noted that the "continuation" exception to the general rule "refers principally to a 'reorganization' of the original corporation," usually accomplished under federal bankruptcy law or statute. *See id.* at 38–39, 206 N.W.2d at 369. While * * * *J.R. Anderson Lumber Co.* dealt with existing *debt* and Carstedt's appeal involves an *obligation* to pay royalties under a license agreement, we do not believe that distinction is material for the purposes of this appeal. The only real benefit Gordon Grindeland and CPS realized from the agreement was Carstedt's technical assistance because there are other patents on the device and other firms can produce and sell the same or similar devices freely. In fact, the record does not indicate Gordon Grindeland even needed that assistance at the time of the sale. In any event, there is no dispute that Gordon Grindeland and CPS paid all royalty fees which accrued as a result of CPS's manufacture and sale of decurling devices.

There is insufficient evidence to conclude that Steven Grindeland's printing business is merely a continuation of his father's business. The record indicates that Steven Grindeland and CPI purchased CPS's inventory of automatic decurlers, various shop tools, equipment and an automobile for an amount exceeding $73,000. The record does not show this was inadequate consideration for all CPS assets or that this was not a bona fide sale of a business. *See* Minn.R.Civ.P. 56.05 ("an adverse party may not rest upon the mere averments * *

**42**

of his pleading but must present specific facts showing that there is a genuine issue for trial"). The trial court did not err by granting summary judgment on this claim.

### Fraudulent Conveyance

Carstedt alleges that the sale of CPS assets was a fraudulent conveyance because the sale was for the purpose of avoiding royalty payments to Carstedt. Carstedt did not obtain a patent sufficient to limit other printing firms from manufacturing and selling automatic decurler devices freely. Steven Grindeland was just as free to manufacture and sell decurling devices as any other printing business could and, in the absence of an intent to defraud creditors, he was free to create his own business and purchase assets from his father's printing business. *See Johnson v. O'Brien,* 275 Minn. 28, 31–32, 144 N.W.2d 720, 722 (1966). Gordon Grindeland was bound to pay royalties only because the supreme court ruled the 1973 exclusive license agreement was valid and enforceable in light of the parties' agreement and their respective valuable considerations. While Gordon Grindeland had an *obligation* to pay royalties on actual sales of automatic decurlers, the obligation did not continue if he retired and liquidated the assets of CPS. We can discern no material difference in this case in which Gordon Grindeland chose to retire and, instead of liquidating his business assets, sold those assets to his son. The trial court did not err by awarding respondents summary judgment on this claim.

### Implied Assignment

Carstedt argues that there was an implicit assignment of the trade name and trademark of his decurler as well as the good will associated with those business assets which, together with CPI's manufacture and sale of the automatic decurlers, makes CPI liable for continued payment of royalties. Because neither Gordon Grindeland nor CPS obtained Carstedt's consent prior to those alleged assignments as required by the license agreement, he claims Gordon Grindeland still remains liable for payment of royalties on all decurling devices manufactured and sold by CPI.

There was neither an express assignment nor an express assumption of Gordon Grindeland's obligations under the exclusive license agreement. Steve Grindeland's mere use of similar trademarks and trade names does not, in our view, constitute an implied assumption of his father's obligations. Steven clearly could have produced and sold decurling devices without incurring royalty obligations had he chosen to establish a printing business in competition with his father's business. *See Boone v. Krieg,* 156 Minn. 83, 85, 194 N.W. 92, 93 (1923) ("he is making use of the knowledge of the business which he acquired in his former employment, and he proposes competing for the patronage of the plaintiff's customers. This he may do.")

Assignees generally are not liable for duties or obligations contained in an assignor's contract.

> The law in Minnesota, * * * holds that the assignment of a contract does not impose upon the assignee the duties or liabilities imposed by the contract on the assignor in the absence of the assignee's specific assumption of such liabilities.

*Meyers v. Postal Finance Co.,* 287 N.W.2d 614, 617 (Minn.1979).

We find no implied assignment of royalty obligations. The trial court did not err in granting respondents' motion for summary judgment on this claim.

### DECISION

The district court's summary judgment is affirmed.

Affirmed.