George S. EVEREST, as Trustee for the heirs and next of kin of Erik Palmer Hanson, Sandra Jo Everest–Hanson and Baby Hanson, Plaintiff,

v.

AMERICAN TRANSPORTATION CORPORATION, a foreign corporation, Defendant.

Civ. 4–86–419.

United States District Court, D. Minnesota, Fourth Division.

May 20, 1988.

John L. Weyland, Jensen & Weyland, Minnetonka, Minn., for plaintiff.

Thomas D. Jensen, and Todd J. Thun, Lommen, Nelson, Cole & Stageberg, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff George S. Everest, the appointed trustee for the heirs and next of kin of decedents Erik Palmer Hanson, Sandra Jo Everest–Hanson, and Baby Hanson,[1] brought this action against General Motors Corporation (GM) and American Transportation Corporation (Am Tran).[2] Plaintiff's decedents were killed when the motorcycle on which they were riding collided with a school bus, the chassis of which was manufactured by GM and the body of which was manufactured by Ward Industries, Inc. (Ward), the predecessor company of Am Tran. Plaintiff asserts that defendants negligently designed and manufactured the bus and that they are strictly liable to him. Plaintiff seeks damages for physical and mental anguish, medical and funeral expenses, decedents' pain, and the deprivation of decedents' opportunity to live. Diversity jurisdiction is alleged. Plaintiff subsequently reached a settlement with GM, and on February 26, 1988, the court dismissed plaintiff's claims against GM.[3] Now before the court is defendant Am Tran's motion for summary judgment on the ground that it is not liable as a successor to the product liabilities of Ward.

*Background*

On this motion for summary judgment, the court views the facts in the light most favorable to plaintiff. The accident occurred on September 7, 1983. Erik Palmer Hanson and his wife Sandra Jo Everest–Hanson, who was four months pregnant, were riding a motorcycle on Minnesota Trunk Highway Number 19. At the intersection of Highway 19 and County Road 73, a GMC Model No. 6000 school bus, operated by Independent School District No. 650 and driven by Bernard Goelz, started across Highway 19, where it was struck by the motorcycle. Erik Palmer Hanson, Sandra Jo Everest–Hanson, and Baby Hanson were killed. After the accident, the bus driver told a Minnesota state trooper that he was not able to see the motorcycle because the passenger door obscured his vision.

Plaintiff was appointed trustee for decedents' heirs and next of kin on May 19, 1986 and filed this action immediately.[4] Plaintiff claims that the front passenger door was negligently designed in such a way that it obstructed the bus driver's view. Plaintiff also alleges that defendants failed to equip the bus with warning lights or devices and that they failed to

---

1. At the time of the accident that prompted this action, Sandra Jo Everest–Hanson was approximately four months pregnant.

2. Am Tran was added as a defendant in plaintiff's second amended complaint, which was filed on September 23, 1986.

3. Because the claims against GM have been dismissed, its motion for summary judgment will be dismissed as moot. Counsel for GM appeared at the hearing to state that it reserved its right to seek sanctions against plaintiff pursuant to Fed.R.Civ.P. 11.

4. Earlier, on October 13, 1984, plaintiff entered into a *Pierringer* settlement with the driver and the school district, under which he received $180,000.

provide warnings about the possibly obstructed view. Defendant Am Tran argues that Ward manufactured the body of the bus in question and that although Am Tran acquired the assets and some liabilities of Ward, it is not liable for products claims arising out of bus bodies manufactured by Ward.[5]

Resolution of the issue of successor liability requires close examination of the facts surrounding Am Tran's acquisition of Ward's assets in 1980.[6] Ward was an Arkansas corporation that began manufacturing school bus bodies in the 1950's. The bus body involved in this accident was manufactured by Ward in 1975. Ward eventually became a large closely held corporation that was owned and operated by the children of its founder D.H. Ward. Robert Harmon operated a Ward sales dealership called Harmon & Sons.

As a result of financial difficulties, Ward filed a Chapter 11 bankruptcy petition on July 25, 1980. On August 25, 1980, MBH, Inc., which later became Am Tran, was formed as an Arkansas corporation for the purpose of acquiring a portion of the assets of Ward. Robert Harmon was one of its four shareholders, none of whom had owned stock in or been employed by Ward. Ward submitted an amended plan of reorganization on October 23, 1980, under which it proposed to convert the Chapter 11 proceedings into a Chapter 7 liquidation and to sell certain of its assets to MBH. Under this plan, MBH was to assume certain of Ward's liabilities, including a bank loan in the approximate amount of $9.2 million.[7] The plan further provided that "MBH, Inc. shall not assume any breach of warranty, product liability, or design claims arising from sales by [Ward]." Section V(4). Ward and MBH executed the purchase and sale of assets agreement on October 24, 1980, and the plan was approved by the bankruptcy court on November 21, 1980.

Am Tran shortly thereafter began manufacturing buses using the former Ward plant and facilities and adopting Ward's contract with the existing labor union. Am Tran continues to manufacture a bus that is similar to the one involved in the accident. Two of Ward's department heads became employees of Am Tran, including Jerry D. Williams, who became its Vice President of Marketing.

*Discussion*

The test for successor liability in Minnesota is set forth in *J.F. Anderson Lumber Co. v. Myers*, 296 Minn. 33, 206 N.W.2d 365 (1973); *see also Carstedt v. Grindeland*, 406 N.W.2d 39, 41 (Minn.Ct.App.1987) (applying *J.F. Anderson*). In *J.F. Anderson*, the officers and sole shareholders of one corporation formed a second corporation, in which they retained their same roles, for the express purpose of avoiding the payment of the first corporation's debts. The old corporation transferred certain assets to the new corporation, which proceeded to hire the same employees and conduct the same type of business.

In considering the issue of successor liability, the Minnesota Supreme Court stated:

> "Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or

---

5. Am Tran notes that three different state courts have addressed the issue of its liability for claims related to bus bodies manufactured by Ward. It states that courts in Texas and Maryland granted its motions for summary judgment on the ground that it was not liable for claims arising out of bus bodies manufactured by Ward. A Pennsylvania court, however, denied its motion. According to Am Tran, Pennsylvania, unlike Minnesota, has adopted the "product line" theory of liability. *See infra* pp. 206–07.

6. For purposes of this motion, Am Tran is willing to accept plaintiff's version of the facts with the exception of its assertion that Robert Harmon had extended operating loans to Ward.

7. As consideration for the transfer of assets, Ward family members were also given either lifetime consulting agreements at an annual salary of $15,000 or exclusive territorial dealerships for the marketing of Am Tran buses. They did not, however, receive any stock in MBH.

merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."

*Id.* 206 N.W.2d at 368–69 (quoting 15 Fletcher Cyclopedia of Corporations § 7122 (perm. ed.)).[8] The court elaborated on the "mere continuation" exception, noting that it "refers principally to a 'reorganization' of the original corporation" under federal bankruptcy law or through state statutory devices. *Id.* 206 N.W.2d at 369. It stressed that "[t]he mere fact that a purchasing corporation is 'carrying on the same business' as the selling corporation is not sufficient to make the purchasing corporation liable for the debts of the selling corporation." *Id.* Applying this standard to the facts before it, the court found that none of the exceptions applied and that the second corporation was therefore not liable for the debts of the first. *Id.* 206 N.W.2d at 370.

Plaintiff argues that Am Tran is liable under the second and third exceptions set forth in *J.F. Anderson.*[9] First, although he must admit that a statutory merger did not occur, he contends that the de facto merger doctrine will likely be adopted in Minnesota and that a de facto merger occurred. He notes that the same facility was used, two-thirds of the employees were retained, and that two managers were retained. He also claims that the lifetime consulting agreements and exclusive territorial dealerships provided to Ward shareholders constitute "quasi-ownership interest[s] in lieu of actual stock." Plaintiff's Brief at 12.

■ As a preliminary matter, Minnesota courts have apparently not adopted the de facto merger doctrine and it is not clear that they will do so in the future. Even if the doctrine were applicable, however, a de facto merger did not occur between Ward and MBH. The Court of Appeals recently considered and approved a formulation of the doctrine under North Dakota law. *Keller v. Clark Equipment Co.,* 715 F.2d 1280, 1291 (8th Cir.1983), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 713, 79 L.Ed.2d 176 (1984). The second of the four necessary elements requires "a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation." *Id.* Here, neither MBH nor Am Tran paid for the assets of Ward with shares of stock. Moreover, none of the shareholders of Am Tran ever held stock in Ward. The requisite continuity of ownership is lacking. Am Tran therefore could not be liable for Ward's liabilities under the de facto merger doctrine.[10]

Plaintiff also claims that Am Tran is liable under the "mere continuation" exception. He argues that courts in other states have begun to give this exception a more liberal reading in the products liability context, focusing on the continuation of the manufacturing process rather than the continuation of management and ownership. Because *J.F. Anderson* concerned a mechanic's lien claim rather than a products liability claim, plaintiff contends that a broader reading of the exception should be applied.

■ Whatever the merit of broader readings of the exception in other jurisdictions, this court is bound to apply Minnesota law. *J.F. Anderson* clearly states that "continuity of business, name, and management alone, is not, we think, sufficient basis for holding a transferee liable for the debts of the transferor." 206 N.W.2d at 370.

---

**8.** The court also noted that a fifth exception has been recognized for transfers of assets without adequate consideration, but added that some courts have included it as part of the fourth exception. 206 N.W.2d at 369.

**9.** He apparently concedes that the first and fourth are inapplicable in view of the facts that MBH expressly disclaimed product liabilities and assumed approximately $10 million of Ward's debt.

**10.** Insofar as only two Ward department heads received positions with Am Tran, the requisite continuity of management is also largely missing. 715 F.2d at 1291.

Moreover, Minnesota courts have indicated that the *J.F. Anderson* standard also applies to products liability claims. *See Standal v. Armstrong Cork Co.*, 356 N.W.2d 380, 382 (Minn.Ct.App.1984). This court therefore declines to expand the "mere continuation" exception and finds that the exception does not apply under the circumstances presented. *See Weaver v. Nash Int'l, Inc.*, 730 F.2d 547, 548 (8th Cir.1984) (declining to expand "mere continuation" exception under Iowa law, noting that "[i]t is for the Iowa courts, not us, to chart the future course of the Iowa law in this area.").

■ Finally, plaintiff argues that it is reasonably foreseeable that Minnesota will adopt the "emerging 'product line' exception to non-liability." Plaintiff's Brief at 18. This doctrine has been expressly adopted in Washington, California, Pennsylvania, and New Jersey.[11] It provides that:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 358, 431 A.2d 811, 825 (1981). Plaintiff contends that Minnesota courts are likely to adopt this doctrine because of their "established progressive approach to products liability decisions." Plaintiff's Brief at 21. As an example, plaintiff cites *McCormack v. Hankscraft Co.*, 278 Minn. 322, 154 N.W.2d 488 (Minn. 1967) (privity of contract not necessary for a products liability claim).

Although it is possible that Minnesota courts will someday adopt the product line theory, it is not for this court to take that step for them. In *Standal*, the Minnesota Court of Appeals recently distinguished Minnesota's "traditional test of corporate successor liability" from the product line rule without expressing any indication that the latter should be adopted. 356 N.W.2d at 382. In addition, the Minnesota legislature passed the following statute in 1981:

> *Transferee liability.* The transferee [corporation] is liable for the debts, obligations, and liabilities of the transferor [corporation] only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state.

Minn.Stat. § 302A.661 subd. 4. The comment of the Reporter to the Advisory Task Force on Corporation Law explains that:

> Subdivision 4 of this section is aimed at limiting the civil liabilities of transferors assumed by transferees to those agreed to between the parties or imposed by law, even if the transferee is operating the corporation in exactly the same manner as it was operated by the transferor. This limits, for example, exposure to product liability claims for items manufactured by the transferor. Of course, federal statutes may preempt this statute in certain areas of liability.

These judicial and legislative actions indicate that this court should not utilize the product line doctrine. *See Tucker v. Paxson Machine Co.*, 645 F.2d 620, 625 (8th Cir.1981) (declining to adopt product line rule under Missouri law and stating that a " 'Federal Court should not impose the policy pronouncements of the Supreme Court of one state upon the citizens of another.' ") (quoting *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 441 (7th Cir.1977)).

In conclusion, none of the exceptions to the traditional test of *J.F. Anderson* applies here, and Minnesota has not adopted the product line doctrine. Even accepting plaintiff's version of the facts, the court finds that no disputed issue of material fact remains and that Am Tran is entitled to judgment as a matter of law. Its motion for summary judgment should therefore be granted.

11. Am Tran contends that "the vast majority of those states considering the product line theory have rejected it." Defendant's Reply Brief at 9 & n. 2 (citing cases).

Accordingly, based upon the above and all the files, records, and proceedings hereing, IT IS HEREBY ORDERED that the motion of defendant American Transportation Corporation for summary judgment is granted, and the complaint is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.