**SCM CORPORATION, a Delaware corporation, Plaintiff,**

v.

**DELTAK CORPORATION, a Minnesota corporation, Defendant.**

Civ. No. 4–88–127.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 16, 1988.

Arthur S. Beeman, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for plaintiff.

Steven K. Champlin, Susan S. Byers, Dorsey & Whitney, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on a motion for summary judgment by defendant Deltak Corporation (Deltak). Deltak's motion initially raises a question of choice of law. Using Minnesota's conflicts rule, the Court has determined that Minnesota law should govern this case. That decided, the Court then finds that summary judgment is inappropriate at this stage of the proceedings. Therefore, Deltak's motion will be denied.

## FACTS

Deltak is being sued by plaintiff SCM Corporation (SCM) for damages resulting from a defective superheater sold by Deltak to Chemetics International Company (Chemetics) for use by SCM in a pigment production plant in Bunbury, Western Australia.

In August 1984, SCM contracted with Chemetics, a Canadian corporation headquartered in North York, Ontario, for the purchase of a new converter and superheater. The contract set forth particular specifications which would result in the superheater being adapted to SCM's production process and required that the superheater be manufactured by either Deltak or a company named Econotherm. Affidavit of Arthur S. Beeman, Exh. A at 33–34. The contract incorporated form AS 2124–1981, Australian General Conditions of Contract, which includes a clause allowing the parties to make a choice of law in an annex to the contract. Affidavit of Steven K. Champlin, Exh. A, AS 2121–1982, clause 2.1. The parties however, did not execute an annex.

In November 1984, Chemetics informed SCM that Deltak, a Minnesota corporation with its principal place of business in Plymouth, Minnesota, would be manufacturing the superheater. Beeman Aff., Exh. B at 3. At that time, Chemetics also provided SCM with Deltak's production schedule for the superheater, including start and complete dates for various steps in the manufacturing process. *Id.*

Chemetics had entered into the contract with Deltak for the manufacture of the superheater in September 1984. Beeman Aff., Exh. C. In designing and manufacturing the superheater, Deltak was to follow the technical specifications provided by Chemetics. Beeman Aff., Exh. D. The specifications included the requirement that Deltak prepare complete fabrication drawings for welding details and that Deltak document the quality of materials and fabrication by providing material test reports and welder certifications. Beeman Aff., Exh. D at 10–11. The contract between Deltak and Chemetics also incorporated a document titled Chemetics General Conditions No. GC/CO/282 which specified that the agreement shall be governed by the laws of the Province of British Columbia, Canada. *Id.*, Exh. D, GC/CO/282 at par. 19. The same document stated that the vendor's liability for breach of warranty shall be limited to the price of the defective goods. *Id.*, Exh. D, GC/CO/282 at par. 16.7.

During the period of design and manufacture of the superheater, Chemetics and Deltak exchanged communications about the welds and the welding procedures being used by Deltak. Beeman Aff., Exh. E. Discovery in this case has so far been limited to responses to interrogatories and the production of documents. As a result, the full nature and substance of the communications between Chemetics and Deltak are not known at this time.

Deltak completed the superheater and delivered it to SCM on or about January 11, 1985. The new converter and superheater were placed into operation at the Bunbury plant in April 1985.

On July 28, 1985, SCM discovered that certain tubes to the superheater were leaking, necessitating the shutdown of the converter. The parties' investigation revealed that the tubes had cracked because of Deltak's failure to properly weld and heat-treat the tubes. Beeman Aff., Exh. F, G. Deltak replaced the cracked tubes, at its own expense, on August 21, 1985.

In this suit, SCM alleges that the defective tubes in the superheater breached ex-

**1430**

press warranties that (1) the superheater was designed, fabricated and manufactured with quality materials and workmanship, (2) the superheater was the result of advanced engineering and skilled manufacturing, (3) the superheater was in accordance with the specifications provided by Chemetics, and (4) the superheater was fit for the particular purposes of SCM. *See,* Complaint par. 18–19; Champlin Aff., Exh. C at 13–15. SCM further alleges that the defective tubes breached implied warranties that the superheater was fit for its ordinary purposes and fit for the particular purposes required by SCM. *See,* Complaint par. 22–25, Champlin Aff., Exh. C at 19–21. SCM claims indirect and consequential damages resulting from the failure of the superheater's tubes, an amount in excess of $335,381. Complaint par. 26.

DISCUSSION

I. Choice of Law

 Deltak's motion for summary judgment requires, as a preliminary matter, that the Court decide what law governs the warranty claims advanced here. Deltak argues for the application of the law of British Columbia, while SCM contends that Minnesota's law controls. The parties agree that Australian law should not be applied.

Ordinarily, the federal district courts apply the choice of law rules of the state in which they sit. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Minnesota's approach to choice of law is based on the five "choice-influencing considerations" proposed by Professor Robert Leflar: predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408, 412 (1973). Even though *Milkovich* in-

volved a tort claim, the language of the court's opinion made clear that the choice-influencing analysis was to replace all of the old choice of law rules. Since *Milkovich,* the Minnesota courts have only departed from that analysis in cases involving a conflict of procedural rules. *See Davis v. Furlong,* 328 N.W.2d 150 (Minn.1983) (forum court should apply its own procedures and practices).

The choice-influencing analysis applies only if the laws which may govern the litigation conflict. *Myers v. Government Employees Insurance Co.,* 302 Minn. 359, 225 N.W.2d 238, 241 (1974). The laws at issue here clearly do conflict. Under the law of British Columbia, privity of contract is required to enforce a warranty claim.[1] *See,* Affidavit of Rodney L. Hayley, par. 8. Under Minnesota law, a lack of privity does not bar recovery for breach of warranty. Minn.Stat. § 336.2–318.

A. *Predictability of Results*

This factor protects the justified expectations of the parties to the transaction. It "applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Hime v. State Farm Insurance Co.,* 284 N.W.2d 829, 833 (Minn. 1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

Predictability of results includes the ideal that parties to a consensual transaction should be able to know at the time they enter upon it that it will produce, by way of legal consequences, the same socioeconomic consequences (usually based upon the assumed validity of the transaction) regardless of where litigation occurs so that forum shopping will benefit neither party....

.... A rule that permits parties to select at the time of their transaction the state whose law is to govern it serves

---

1. The law of British Columbia provides an alternative theory of liability for breach of warranty which is also inapplicable under the facts of this case. The courts in British Columbia have held that representations made by a manufacturer to induce a purchaser to purchase from another seller give rise to a collateral contract between

the manufacturer and purchaser, breach of which will give rise to liability in damages. Hayley Aff., par. 9. Because Deltak made no representations about its product directly to SCM, Affidavit of Dennis Swanda, par. 5, SCM cannot recover on a collateral contract theory.

this purpose, but the purpose ought to be served even when parties do not know enough about the laws of the two or more states involved to make an advance choice between them and even when the parties do not think about choice of law at all.

R. Leflar, L. McDougal and R. Felix, *American Conflicts Law* § 103 (4th ed. 1986) (footnote omitted). In this case, there was no agreement between SCM and Deltak on choice of law.

Deltak argues that the choice of law clause in Deltak's contract with Chemetics should control. While Deltak correctly notes that Minnesota has invariably enforced contractual choice of law clauses between parties and cites *Standal v. Armstrong Cork Co.*, 356 N.W.2d 380 (Minn.Ct. App.1984), for the proposition that a contractual choice of law clause can govern a dispute involving a third party, its argument does not support the application of the choice of law clause in this case. In *Standal,* the court of appeals enforced a choice of law clause against a litigant who was a party to the contract containing the clause. Application of that clause was clearly consistent with the defendant's expectations in that case. Not only was the litigant a party to the contract, it had also sought application of the law designated in the contract in prior factually similar cases. 356 N.W.2d at 382. Therefore, *Standal* will not support the application of a choice of law clause against a litigant who was not party to the agreement containing the clause. The case law on this point in other jurisdictions states that a contractual choice of law clause does not bind a litigant who is not a party to the contract. *See, e.g., Broadcasting Rights International Corp. v. Societe du Tour de France*, 675 F.Supp. 1439, 1448 (S.D.N.Y.1987); *BASF Wyandotte Corp. v. BBW Group, Inc.*, No. 84–5559, slip op. (E.D.Pa. Mar. 23, 1987), published at 1987 Westlaw 8212; *Vincent Brass & Alum. Co. v. Johnson*, 149 Ga. App. 537, 254 S.E.2d 752 (1979), *reversed on other grounds*, 244 Ga. 412, 260 S.E.2d 235 (1979).

When the justifiable expectation of the parties to this case are considered, the pre-

dictability factor favors application of Minnesota law. Because Deltak is a Minnesota corporation and the superheater was designed and manufactured in Minnesota, both of the parties in this case could reasonably anticipate that warranty disputes between Deltak and SCM would be determined by Minnesota law. On the other hand, SCM could in no way expect that its rights would be governed by the law of British Columbia, a jurisdiction with no connection to this case.

### B. *Maintenance of Interstate and International Order*

Under Leflar's analysis this factor incorporates concerns about sovereignty and interstate commerce, but under Minnesota law the inquiry is limited to determining whether the forum state has "a substantial connection with the facts and issues involved." *Milkovich*, 203 N.W.2d at 417; *Standal*, 356 N.W.2d at 381. Because the product at issue was designed, manufactured and sold in Minnesota by a Minnesota corporation with its principal place of business in Minnesota, this state clearly does have a substantial connection to this matter.

### C. *Simplification of the Judicial Task*

This consideration reflects a concern that the court hearing the case be able to apply the law chosen without practical difficulty. *Hime*, 284 N.W.2d at 833. While the difficulty of accurately discovering and interpreting the law of another country might favor a choice of domestic law in some cases, the substance of the Canadian law relevant to this case is not disputed and therefore, this factor does not favor application of Minnesota law.

### D. *Advancement of the Forum's Governmental Interests*

Under this consideration, Minnesota courts consider whether the state has a strong interest, reflected in its public policy, which favors a particular choice of law. Generally, this factor will weigh towards application of Minnesota law, but in some

cases the choice of another forum's law has been found to better advance Minnesota's interest. *Bigelow v. Halloran,* 313 N.W.2d 10, 11–12 (Minn.1981) (Minnesota's interest in seeing tort victims fully compensated furthered by application of Iowa law); *Standal,* 356 N.W.2d at 382 (Minnesota's interest in providing compensation for resident tort victims furthered by application of Pennsylvania law).

Deltak argues that Minnesota's interest in the development of legal principles which increase the certainty and stability of legal relationships in international trade and commerce favors the enforcement of contractual choice of law provisions. In support Deltak cites cases enforcing a choice of law or an arbitration clause against a litigant who has agreed to the provision at issue. That is not the case here. SCM was not a party to the contract containing the choice of law clause which Deltak seeks to invoke.

One interest which Minnesota courts have often invoked in choice of law decisions is the state's interest as a "justice administering state." *See, e.g., Hime,* 284 N.W.2d at 833–34; *Myers,* 225 N.W.2d at 243; *Milkovich,* 203 N.W.2d at 417. This interest is defined as the forum's interest in not having its courts "called upon to determine issues under rules which, however accepted they may be in other states, are inconsistent with our own concept of fairness and equity." *Milkovich,* 203 N.W.2d at 417. Section 2–318 of the Uniform Commercial Code, adopted by Minnesota at Minn.Stat. § 336.2–318, embodies a policy of extending the express or implied warranties of a seller to "any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty." Section 2–318 does not preclude a seller from limiting the remedies of the buyer and third party beneficiaries. It does, however, require that limitations on remedies operate equally against buyers and third party beneficiaries. Minn.Stat. § 336.2–318, Uniform Commercial Code Comment 1. In this case, Deltak and Chemetics agreed to have the transaction governed by the law of a jurisdiction which allows Chemetics, a buyer with privity, to enforce Deltak's warranties while providing SCM, the third party beneficiary of the contract, with no such power. The result is obviously inconsistent with the policy embodied by section 2–318. In the Court's opinion, application of the choice of law clause in this case would be contrary to Minnesota's interest as a justice administering state because it allows Chemetics to bargain away SCM's right to claim the benefit of Deltak's warranties without Chemetics incurring any risk itself.

### E. *Application of the Better Rule of Law*

This consideration reflects the fact that judges making choice of law decisions are influenced to choose what they consider to be the better of two rules. *Milkovich,* 203 N.W.2d at 415, relying on Ehrenzweig, *"False Conflicts" and the "Better Rule": Threat and Promise in Multistate Tort Law,* 53 Va.L.Rev. 847, 853 (1967). If exercised with discretion, this influence can have a positive effect on the development of the law. *Id.* Resort to this factor, however, is appropriate "only when other choice-influencing considerations leave the choice of law uncertain." *Myers,* 225 N.W.2d at 244. Because the four factors discussed above support the conclusion that Minnesota law should apply, the Court need not consider which of the rules at issue in this case is the better law.

## II. Summary Judgment

Under Minnesota law, privity of contract is not a prerequisite for recovery in an action for breach of warranty. *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159, 161 n. 5 (Minn.1981). As noted, Minnesota has adopted section 2–318 of the Uniform Commercial Code which provides:

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

Minn.Stat. § 336.2–318. A seller can modify its warranties and limit remedies for breach against the purchaser as provided by section 2–718 and 2–719. Such limitations operate equally against the purchaser and third party beneficiary. *Id.,* Uniform Commercial Code Comment 1. In the absence of an effective limitation of remedy, a seller is liable for the consequential damages resulting from a breach of warranty if the damages are such that the seller could have reasonably foreseen them. Minn.Stat. §§ 336.2–719(3), 336.2–715(2).

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether there are any genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir. 1987). In making this determination, the Court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Deltak advances three arguments in favor of summary judgment. First, Deltak argues that SCM cannot recover consequential damages because Deltak could not have reasonably foreseen the damages SCM incurred. Second, Deltak argues that SCM is not entitled to proceed on a theory of express warranty because SCM has not proven the existence of any direct communication between Deltak and SCM upon which a claim of express warranty might be based. Finally, Deltak argues that the limitations of remedy clause in its contract with Chemetics precludes recovery of consequential damages by SCM.

■ Deltak's first argument is not yet ripe for decision. An affidavit from a senior vice president of Deltak, Dennis Swanda, asserts that Deltak did not possess any information which would enable Deltak to foresee the consequential damages that might be incurred by the ultimate user of the superheater. Deltak, however, received detailed specifications as part of the contract, was required to document the quality of materials and fabrication throughout the course of manufacture, and, in particular, exchanged communications with Chemetics about the welds and welding procedures used during manufacture of the superheater. As yet, no depositions have been taken in this case. SCM is entitled to undertake discovery to determine whether Deltak could reasonably foresee the consequential damages SCM would incur because of substandard welds.

■ Deltak's second argument for summary judgment, that SCM cannot recover on a theory of express warranty absent some direct communication between SCM and Deltak, ignores the plain language of section 2–318. That provision extends the express and implied warranties made by the seller to third parties who might reasonably be expected to use the goods. Minn.Stat. § 336.2–318, Uniform Commercial Code Comment 1. Thus, SCM can recover for breach of all warranties, express

and implied, which Deltak extended to Chemetics. While SCM does bear the burden of producing evidence establishing the existence of any express warranties, the technical specifications which Deltak adopted as part of the contract and the evidence that Chemetics and Deltak exchanged communications concerning the welding procedures used on the superheater establish enough, at this stage of the litigation, for SCM to survive this motion for summary judgment.

■ The final argument raised by Deltak concerns the effect of the limitations of remedy clause on the warranties that may have arisen out of the technical specifications and the other communications between Chemetics and Deltak. The United States Court of Appeals for the Eighth Circuit recently considered Minnesota law on this question in *Northern States Power Co. v. ITT Meyer Industries*, 777 F.2d 405 (8th Cir.1985). The facts of that case are as follows. Northern States Power Co. (NSP) contracted with ITT Meyer Industries (Meyer) for the manufacture of screw anchors. The contract incorporated NSP's technical specifications for the design of the screw anchors. *Id.* at 406–07. A clause in the contract, titled Item 16, stated the warranty provisions, disclaimed all other warranties and included a limitation of remedy clause. *Id.* at 410–11. The language of the limitation of remedy clause and the disclaimer provision in Item 16 was as follows:

> Meyer's liability for any breach of this warranty shall be limited solely to job site replacement or repair, at the sole option of Meyer, of any defective part or parts, during a period of one (1) year from the date of shipment, providing the Product is properly installed and is being used as originally intended.

2. The relevant part of Minn.Stat. § 336.2–313 provides:
 (1) Express warranties by the seller are created as follows:
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> IS EXPRESSLY AGREED THAT THIS SHALL BE THE SOLE AND EXCLUSIVE REMEDY OF THE BUYER. UNDER NO CIRCUMSTANCES SHALL MEYER BE LIABLE FOR ANY COSTS, LOSS, EXPENSE, DAMAGES, SPECIAL DAMAGES, INCIDENTAL DAMAGES OR CONSEQUENTIAL DAMAGES ARISING DIRECTLY OR INDIRECTLY FROM THE USE OF THE PRODUCTS, WHETHER BASED UPON WARRANTY, CONTRACT NEGLIGENCE OR STRICT LIABILITY.
>
> THE WARRANTY AND LIMITS OF LIABILITY CONTAINED HEREIN ARE IN LIEU OF ALL OTHER WARRANTIES AND LIABILITIES, EXPRESSED OR IMPLIED....

*Id.* at 410–11 n. 6. Despite this language, the Eighth Circuit found that the district court had correctly submitted to the jury the question whether any express warranties arose from the performance specifications. *Id.* at 411. Relying on Minn.Stat. § 336.2–313,[2] the court held that under Minnesota law "an express warranty may arise from an affirmation of fact or a promise or a description of the goods made by the seller to the buyer which becomes part of the basis of the bargain.... A description may consist of technical specifications." *Id.* (citations omitted). In addition, the court held that it was irrelevant that the specifications were made by the buyer rather than the seller. *Id.* at 412.

The court then turned to the impact of the disclaimer and limitation of remedy provisions in the contract on the additional warranties created by the specifications. The court held that the disclaimer was inoperative because it was inherently inconsistent with the specifications warranties. *Id.* The court found the limitation of reme-

 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
The comment to the provision notes that technical specifications are an exact description of the goods which can create an express warranty "if made part of the basis of the bargain." Minn.Stat. § 336.2–313, Uniform Commercial Code Comment 5.

dy provision inapplicable to the warranties created by the specifications. *Id.* at 412–13. The limitation provision was found applicable only to the warranties enumerated in Item 16 because

> [t]he lead sentence in the limiting clause speaks of breach of "this" warranty. Read with full regard to the context in which it appears, we believe that this clause specifically ties the proposed remedy to breach of a warranty created in Item 16.

*Id.* at 413. The court explained that it would not apply a limitation of remedy provision against the additional warranties created by the technical specifications where the limitation "was not expressly made applicable to the other warranties in the contract." *Id.*

The warranty clause in the contract between Deltak and Chemetics reads, in part:

16. WARRANTY

16.1 Vendor warrants that the Goods purchased under this Agreement are fit for the particular purpose stipulated in this Agreement, and *will perform in accordance with the specifications stipulated by Purchaser herein or hereunder*

. . . .

. . . .

16.7 Vendor's liability in damages for breach of the warranties *in this Clause* shall be limited to the price of the defective or unfit Goods.

Beeman Aff., Exh. C, No. GC/CO/282 (emphasis added). The limitation of remedy clause in this case is different from the one in *Northern States Power* because, while it is limited to the warranties "in this clause," the clause includes a reference to "the specifications stipulated by the Purchaser herein or hereunder." Yet it remains to be determined whether the technical specifications at issue are encompassed by the warranty clause as it should properly be interpreted. Furthermore, it must also be determined whether additional warranties arose as a result of the communications between Deltak and Chemetics concerning the welding procedures used during manufacture of the superheater. Therefore,

summary judgment cannot be granted at this point.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. this case will be decided under the laws of the State of Minnesota; and

2. defendant Deltak's motion for summary judgment be denied.